THOMAS BLANCHARD *vs.* WILLIAM A. COOKE & others.

Worcester. Oct. 8, 1886. — March 23, 1887. DEVENS & W. ALLEN, JJ., absent.

If a defendant in a suit in equity has appeared, and the bill is taken for confessed against him for want of an answer, he still has the right to be heard upon the form of the decree, and to appeal from it.

After a decree in a suit in equity had been entered, that the bill be taken for confessed against the defendant, who had appeared but had filed no answer, a final decree against him was made, from which he appealed. The defendant was then, and for some time before had been, an insolvent debtor; and this fact had been brought to the attention of the court, but not by himself. The assignee in insolvency of his estate, on the day after the final decree was entered, filed a petition asking that the decree be vacated, and that he be allowed to appear and defend the case. He also appealed from the decree against the insolvent. The court allowed him to become a party, file an answer, and try the case on its merits, provided the appeals should be withdrawn, and the answer filed within a certain time; but refused to vacate the decrees. The appeals were withdrawn, and the answer was filed within the time specified. After the hearing on this answer, the debtor filed a plea setting up his discharge in insolvency. The judge who presided at the hearing on the issue raised by the answer of the assignee refused to allow the assignee to try the case on the merits, and refused to consider the question of the debtor's discharge, on the ground that the plaintiff had had no opportunity to impeach its validity. *Held*, that, at the trial upon the issues raised by the pleadings, the assignee was entitled to try the case on the merits, and was not precluded from so doing by the fact that the decrees against the original defendant had not been vacated. *Held, also,* that the debtor was to have leave to plead his discharge, and to be heard upon it.

B., the owner of a stock of goods in a store, made a contract in writing with C., by which B. agreed to sell, and C. to buy, the goods for $14,214.94. C. was to have possession of the goods, with full authority to sell the same as a retail dealer. For the security of B., the legal title of the goods was to remain in B., until $14,214.94 was paid, with interest at seven per cent; and the title was to vest in C. "in the proportion to the amount which at any time he shall have paid on account of said $14,214.94, and interest." C. covenanted and agreed that B. should be "the legal owner of a fractional part of the stock of goods in said store, whether it be these goods or goods subsequently purchased by said C., which fractional part shall at all times bear the same proportion to the balance of $14,214.94, and interest, then unpaid and due from said C., that the whole amount of goods now bears to said sum of $14,214.94." C. was to pay, out of the proceeds of sales made by him, the expenses of the store, and was to have the right to use the proceeds of sale to purchase new goods in the regular course of business, and to take from the proceeds a certain sum each month for his own use. C. was also to take an account of stock twice a year, and to pay over to B. the net proceeds of the goods sold. C. was also to keep the goods and other goods afterwards purchased insured, the insurance to be payable to B., who, in case of loss, was to collect the insurance, pay to himself the amount

then due from C., and pay the balance to C. ; and if he was unable to collect the full amount, B. was to bear " that proportion of that loss which the amount due to him from said C. bears to said sum of $14,214.94, with interest at the rate aforesaid, at the time of said loss." C. took possession of the goods, made sales, bought other goods, and made partial payments, when B., for breach of condition on the part of C., entered and took possession of all the goods then remaining, against C.'s consent. At this time the value of the goods in the store was $14,500, of which about $6000 worth had been bought by C., but not paid for. At the time the goods were sold by B. to C. the price stated was their fair value. *Held*, that the contract was one of a conditional sale, and was not in effect a mortgage. *Held, also*, that the clause as to B.'s interest in the goods was to be interpreted as if it read, " B.'s fractional part shall at all times bear the same proportion to the whole amount of goods as the balance of $14,214.94, and interest, then unpaid, bears to $14,214.94." *Held, also*, that if the contract was not actually fraudulent, as against the creditors of C., and B. rightfully took possession of the goods, before they were attached and proceedings in insolvency were instituted, and retained possession, his title to the extent of his interest was good against C.'s assignee in insolvency ; and that this applied to the after-acquired goods, as well as to those sold by B.

BILL IN EQUITY, filed in the Superior Court on December 4, 1884, brought originally against William R. Cooke alone, and alleging that on July 12, 1883, the plaintiff was the owner and in possession of a stock of goods in a store in Southbridge ; and that on that day he and the defendant executed a contract, under seal, containing the following provisions:

" Said Blanchard hereby agrees to sell, and said Cooke agrees to buy all the stock of goods, fixtures, and merchandise, and property owned by said Blanchard now contained in the store of the Edwards estate, at said Southbridge, as itemized, invoiced, and entered upon a certain stock-book marked ' T. Blanchard's stock-book,' for the sum of fourteen thousand two hundred and fourteen and $\frac{94}{100}$ dollars, said agreement to sell and purchase being made on the following terms and conditions, to wit:

" Said Blanchard promises and agrees to give, and hereby does give, to said Cooke possession of said goods, merchandise, fixtures, and property, with full power and authority to manage, deal with, and sell the same, in the regular course of business as a retail dealer in dry goods, and to take and receive the proceeds from such sales, and to apply the same as shall hereinafter be provided, upon the following express conditions, namely:

" That for the security of said Blanchard the legal title in said goods shall be and remain in said Blanchard until said sum of $14,214.94, with interest at the rate of seven per cent per

annum, shall have been fully paid, it being agreed, however, that said title may vest in said Cooke in the proportion to the amount which at any time he shall have paid on account of said $14,214.94, and interest, said Cooke hereby covenanting and agreeing that said Blanchard shall be the legal owner of a fractional part of the stock of goods in said store, whether it be these goods or goods subsequently purchased by said Cooke, which fractional part shall at all times bear the same proportion to the balance of $14,214.94, and interest, then unpaid and due from said Cooke, that the whole amount of goods now bears to said sum of $14,214.94.

" Said Cooke shall pay, out of the proceeds of all sales made by him, the rent of said store, taxes, reasonable clerk hire, and insurance, and shall have the right to use the proceeds of sales of these goods to purchase new goods in the regular course of business, and also have the right to take from said proceeds the sum of one hundred and twenty-five dollars each month or fractional part thereof for his own use and living expenses.

" Said Cooke shall take an account of stock some time during the months of February and August each year, and, after the payment of the expenses before named for said six months prior to taking said account of stock as aforesaid, pay to said Blanchard the balance of said entire proceeds of sales for each six months, until the whole sum of $14,214.94, with interest at the rate aforesaid, shall have been fully paid, it being agreed said Cooke shall have the right to pay to said Blanchard, at any time, any other and further sums on account of said $14,214.94 for all of which payments said Blanchard is to give a receipt, and indorse the same on a duplicate copy of this contract; provided, however, and it is mutually agreed, said $14,214.94, with interest at the rate aforesaid, shall be fully and entirely paid within four years from the date herein before first written.

" That said Cooke shall keep regular books of account of all purchases and sales, and all expenses and receipts, which at all reasonable times shall be open to the inspection of said Blanchard, his attorney or representatives; and that said Cooke shall make or cause to be made a trial balance of each month's business, and give the same to said Blanchard at the end of each month.

" That said Cooke shall keep said stock of goods and fixtures, and all other goods and fixtures that he may hereafter purchase, insured in some good insurance company or companies for the full value thereof, which insurance shall be payable to said Blanchard, and in case of loss by fire it is agreed said Blanchard is authorized and empowered, and shall have the right, to sue and collect the whole amount of insurance from said companies at the expense of said Cooke, and, after collecting the same therefrom, first pay to himself the amount at that time due to himself from said Cooke, and then pay the balance to said Cooke; it being agreed, however, if said Blanchard shall be unable to collect the full value of the goods burned or injured from said companies, that said Blanchard shall bear that proportion of that loss which the amount due to him from said Cooke bears to said sum of $14,214.94, with interest at the rate aforesaid, at the time of said loss. But in case of any loss, injury, or casualty other than by failure to collect insurance for full value of goods in case of loss by fire, said Cooke shall bear the whole risk thereof, and said Cooke hereby assumes all such risks, and covenants and agrees in such case to pay to said Blanchard the full sum of $14,214.94, with interest at the rate aforesaid; the same as if no such loss, injury, or casualty had occurred.

" That said Blanchard agrees, when said $14,214.94, with interest at the rate aforesaid, shall have been fully paid to him, to give to said Cooke a proper bill of sale of the goods herein described, and to cancel and discharge this instrument, and to assign, transfer, and set over the lease of said store to said Cooke, which said Cooke hereby agrees to accept and assume, and pay the rent according to the terms therein expressed.

"It is further agreed, if said Cooke shall sell the stock of goods now owned by him and contained in the store in Burgess Block, Sandwich, Mass., that he shall pay the proceeds thereof, as soon as received by him, over to said Blanchard, on account of said sum of $14,214.94; but if said Cooke shall not sell the same, said stock shall be removed to said Southbridge, and become a part of the stock referred to therein, and subject to the conditions and terms of this contract."

The bill further alleged, that on July 12, 1883, the defendant took possession of the property named in the contract, and

thereafter did business in said store as a retail dealer in dry goods, collecting the proceeds of the sales of such goods, and paying out of such proceeds store rent, taxes, insurance, and clerk hire, and buying therewith goods to supply and maintain his stock and regular course of business, a part of the said goods originally purchased and goods since that date purchased in the regular course of business being now in the said store; that the defendant had failed and neglected to take accounts of stock, and pay over the balance of the proceeds of sales, and to make and give trial balances, as provided in the contract, though often requested so to do by the plaintiff, but, in violation of his said agreement, had taken said proceeds, and appropriated a large sum thereof, namely, in all about $3500 of such proceeds belonging to the plaintiff, to his own use, contrary to the conditions of the said contract, and had refused to pay said sum.

The bill further alleged, that on November 28, 1885, default having been then made as aforesaid by said defendant in making said payment, and said breach of the conditions contained in said contract then continuing, the plaintiff took possession of the goods, fixtures, and merchandise in said store, and since said date had had entire possession and control thereof, and claimed the title thereto, and the right to hold the same as a pledge, and as security for his said debt, as provided in said contract, and in trust for the purpose of having the same applied to the payment of the said debt due him; that the sum now due to the plaintiff upon said debt, and interest, was in all about $11,500, and the value of the goods, fixtures, and merchandise was unknown, but was believed to be insufficient security for the payment of the sum due the plaintiff; "that the plaintiff believes that the defendant is largely indebted to other creditors, and is unable to pay the same, and refuses to consent to any release of any right he has to said property;" that if any fractional part of said goods has vested in the defendant at all, the same is of little value; that the defendant has money in his hands, and accounts due him, from the sales of the goods, not returned or accounted for to the plaintiff, and belonging to him under the contract, to a larger amount in value than the value of the defendant's interest in the goods by means of any payments made by him therefor.

The prayer of the bill was for an account, for an injunction restraining the defendant from transferring his interest in the goods, and for a receiver to take possession of the goods, to sell them, and to hold the proceeds to be distributed according to the rights of the parties, and applied to the payment of the sums found due the plaintiff.

An injunction was issued as prayed for; and a receiver was appointed, who sold the goods, and paid the net proceeds into the hands of the clerk of the court.

The defendant appeared, and, on December 16, 1884, filed a cross bill.

Afterwards, other persons claiming to be creditors of the defendant, and to have attached the goods in the store, were permitted to intervene.

On January 26, 1885, the plaintiff filed a supplemental bill, alleging that the defendant had money in his possession derived from the sale of the goods, which he intended to convert to his own use; that he had outstanding accounts for goods which had been sold; that he intended to collect these accounts, and to apply the money collected to his own use; and that certain persons claimed to be creditors of the defendant, and to have an interest in the goods.

The prayer of this bill was that the defendant be ordered to deliver any money he had collected to the receiver, and to deliver to him his books of account; that the receiver be authorized to collect these accounts, and hold the proceeds subject to the order of the court; and that the creditors who had not already appeared be summoned to answer the bill as parties defendant.

On April 1, 1885, these creditors, having appeared, filed their answer, and, among other things, alleged that since filing the bill Cooke had been adjudged an insolvent debtor by the Court of Insolvency for the county of Worcester.*

On November 4, 1885, the plaintiff filed a motion alleging that Cooke had been duly adjudged an insolvent debtor, and that George P. Staples had been duly appointed assignee in

---

* It appeared from the discharge hereinafter referred to, that the first publication of notice was on March 27, 1885.

insolvency, and had accepted the trust, and praying that the assignee be made a party, and be ordered to file an answer or have the bill taken for confessed against him. The motion also stated that Cooke, although he had appeared, had not filed an answer, and prayed that the bill might be taken for confessed against him.

On December 26, 1885, the court entered a decree that the bill be taken for confessed against Cooke, and that the plaintiff have leave to withdraw so much of his motion as related to the assignee in insolvency.

On the same day, after the bill was taken for confessed against Cooke, he filed a motion for leave to file an answer.

On January 11, 1886, a final decree was entered, which declared, that the defendant Cooke was, under the contract, indebted to the plaintiff in the sum of $12,512.30, and interest; that the legal title to the goods was, at the time of filing the bill, in the plaintiff, with the right to hold the same, and to apply the proceeds thereof to the payment of said debt; and that this sum, with costs, be paid to the plaintiff from the funds in the hands of the clerk; that the bill and supplemental bill be dismissed as to all the defendants except Cooke; that the cross bill be dismissed, without costs; and " that, in case said sum in the hands of the clerk shall not be sufficient to satisfy said debt and costs, execution shall issue for the balance against said Cooke in favor of the said Blanchard."

On January 12, 1886, Staples, as assignee, filed a petition alleging that Cooke was an insolvent debtor, and that he was the assignee of his estate, and " that the title to a large part of the assets of said Cooke is involved in said suit, and that the same is claimed by your petitioner as assignee of said Cooke; " and asked that the final decree, and the order taking the bill for confessed as against Cooke be vacated, and he be permitted to come in, file his answer, and defend the suit as assignee. On the same day the court allowed him to become a party, file his answer, and defend as assignee, but refused to vacate the decrees.

On January 15, 1886, Cooke appealed from both of the decrees against him.

On January 23, 1886, Staples, as assignee, filed a motion that the decree of January 11 be vacated, and that he be allowed to

file his answer; and on February 9, 1886, he claimed an appeal from said decree.

On February 13, 1886, the assignee was permitted to file an answer on or before the 17th of that month, "provided that all appeals now pending are previously waived or withdrawn, and the assignee will hold himself ready for an early and final hearing of said cause upon the merits in the Superior Court." The appeals were withdrawn, and the assignee filed his answer on February 17, and, upon issue joined thereon, the cause was heard before *Aldrich*, J., who reported the facts found by him, and the questions of law raised at the hearing, as follows:

" The fund in the hands of the clerk of the court, being the net proceeds of the property in question, which had been sold by the receiver heretofore appointed, was $13,000, and some interest which accrued in his hands.

" I find that on July 12, 1883, the date of the contract, the amount in value of all the property covered by the agreement was, by agreement of parties, $14,214.94, the same sum which Cooke was to pay therefor.

" I find that the defendant Cooke, on July 12, 1883, the date of said contract, took possession of all the goods, fixtures, merchandise, and property named in said contract, and thereafter, down to November 28, 1884, did business in the store named in said contract as a retail dealer in dry goods, selling from these goods and also from goods subsequently purchased from other parties, collecting the proceeds of such sales, and paying out of such proceeds store rent, taxes, insurance, and clerk hire, and buying therewith, in the regular course of business, from time to time, from other persons and firms, goods to supply and maintain his stock, and also buying goods from time to time, to Blanchard's knowledge, from various persons and firms, sometimes partially and sometimes solely upon credit.

" I also find that a large portion of the goods in said store on November 28, 1884, were thus purchased from other parties; that the exact amount of goods purchased during the months of September, October, and November, 1884, on account of which no payment whatever had been made to the sellers, and for which said Cooke was owing various persons and firms on November 28, 1884, was $6467.84.   Of these goods on account

of which no payment had been made, a small part had been sold, but the most of them were in said store on that date, November 28, 1884.

" I find that on or before November 28, 1884, Cooke had paid said Blanchard on account of said contract the sum of $2035.82.

" I find that the amount due said Blanchard upon said contract was on November 28, 1884, the sum of $12,179.12, which said Blanchard is now entitled to recover from said Cooke, with interest from said November 28, 1884.

" I find that the amount in value of all the goods, fixtures, and merchandise in said store on November 28, 1884, was $14,500.

" I find that in April, 1885, George P. Staples was duly appointed assignee in insolvency of the estate of said Cooke, and is now acting as such assignee.

" At the hearing I assumed it as adjudicated by the decree taking the bill *pro confesso*, and the final decree thereon as against Cooke, that on said November 28, 1884, said Cooke had violated the conditions of said contract, and that said Blanchard rightfully took possession of the goods and property in said store on November 28, aforesaid ; and I ruled that the only question then before me was as to the division of the $13,000, and accrued interest thereon in the hands of the clerk.

" Counsel for Staples offered evidence to show that there had been no breach of said contract by said Cooke on or before November 28, 1884, and also that there was never any delivery by Blanchard to said Cooke of the goods, or any part thereof, which were in said store on November 28, 1884, and also that said Cooke never consented to said Blanchard taking possession of the whole or any part thereof, and that Cooke refused so to do.

" But I ruled as above stated, and excluded all such evidence, and counsel for Staples duly excepted to such rulings.

" The plaintiff then requested me to rule that by the terms of said contract he was entitled to hold the whole of the proceeds of the sale of said goods to the full extent of his debt aforesaid and interest, which I find was, on November 28, 1884, $12,179.12.

" Counsel for Staples requested me to rule that said Blanchard could not, under the allegations of the bill in this case, hold the goods purchased by said Cooke from other parties, as hereinbefore stated, after the date of said contract, or any fractional interest in them or in the proceeds thereof, as against said Staples; but I declined so to rule, and ruled as hereinafter stated.

" He further requested me to rule that, as to all after-acquired goods, said Blanchard, in order to hold them, or any fractional interest in them, or in the proceeds thereof, as against said Staples, must prove delivery of said after-acquired goods to said Blanchard by said Cooke, or must show some act by said Cooke, after the goods reached his hands, to identify the property he meant to have pass under the contract, or some act to pass title to the goods, or must show some consent of said Cooke to possession of them by Blanchard. He further requested me to rule that said Blanchard could not, under the allegations of the bill and on the proof in this case, hold the goods, or any part of them, or of the proceeds thereof, which were purchased from other parties solely upon credit, as before stated, and which had not been in any part paid for by said Cooke on November 28, 1884.

" But having already ruled as above stated, I declined to rule as requested by either party, and ruled and found as follows:

" I find that said Cooke having paid said Blanchard $2035.82 of said $14,214.94 which he had agreed to pay for said property, his title thereto under the terms of said contract accrued in proportion to his payments, and I have so construed the said contract.

" I therefore find, that if, on said date of November 28, 1884, said goods, fixtures, and merchandise, and property, had been divided, Cooke's share thereof would have been, by the terms of said contract, represented by the fraction $\frac{2035.82}{14214.94}$.

" I find that the said sum of $13,000 now in the possession of the clerk, and the interest accrued thereon since it was paid by the receiver into the hands of the clerk, shall be divided according to said fraction, and that said assignee, Staples, should receive $\frac{2035.82}{14214.94}$ thereof, and the plaintiff the balance; and I ordered the decree of January 11, 1885, to be modified accordingly.

" Both parties excepted to said rulings and refusals to rule, and appealed from said decree.

" If the rulings were correct, the decree is to stand; otherwise such order and decree is to be entered as law and justice require."

On June 2, 1886, a final decree was entered, modifying the first decree, in which it was ordered that $11,138.18 be paid the plaintiff from the funds in the hands of the clerk, together with $407.62 interest; that $1861.82 be paid from said funds to Staples, as assignee, together with $68.13 interest; that the plaintiff have judgment against Cooke for $1885.44, that being the balance of Blanchard's claim against Cooke after deducting said sum of $11,545.80, and for costs of suit; and that execution issue against Cooke therefor.

From this decree Cooke appealed on June 28, 1886, and on the same day filed a plea setting up his discharge in insolvency on May 5, 1886.

On June 29, the plaintiff, and on June 30, Staples, the assignee, appealed from the decree.

Subsequently the judge made the following supplemental report :

" The defendant Cooke appealed from the decree modifying the original decree against him, and now claims that no judgment should have been entered against him in this case. That judgment is based upon the original decree aforesaid; and the amount of it was determined by deducting from the whole sum, as found, of Cooke's indebtedness to Blanchard, the amount decreed to Blanchard from the proceeds of the sale of the property in controversy, as appears of record in this case, and rendering judgment for the balance of the indebtedness so determined. At the final hearing in this case said Cooke offered no evidence and addressed no argument to the court, nor did he make any motion for delay of the proceedings in this case to await proceedings on his petition in insolvency.

" After said decree modifying the original decree was passed on June 2, 1886, said Cooke, without leave asked or granted, did, on June 28, 1886, file among the papers in this case a copy of what purports to be his discharge in insolvency, granted May 5, 1886, and now asks to have that discharge treated as a bar to any judgment against him in this case. There has been no hearing before the court in relation to that discharge, nor has the

plaintiff, if he desires it, had any opportunity to impeach the validity of the same. I have therefore declined to take any action in relation to said discharge, or by reason of it to change in any manner the terms of the decree from which the said Cooke has appealed.

" If said decree as to said Cooke is correct, it is to be affirmed; otherwise, such orders and decrees are to be made as law and justice require."

*F. P. Goulding & A. J. Bartholomew*, for the plaintiff.

*J. J. Myers*, for the assignee in insolvency.

FIELD, J. The procedure in this case suggests some interesting questions of practice which have not been argued, but we have considered only the questions argued and the matters involved in them.

We assume that it was within the power of the Superior Court to admit the assignee as a party at the time when, and in the manner in which, he was admitted. We assume also, that the court could modify the original decree according to the facts established at the final hearing. The defendant Cooke, having appeared, and the bill having been taken for confessed against him for want of an answer, had still the right to be heard upon the form of the decree, and to appeal from it. Whether, if the bill was not so definite, or was not of such a nature, that a decree could be entered upon it without hearing evidence, Cooke could, after the bill had been taken for confessed against him, appear and controvert the evidence offered by the plaintiff, need not be determined, for there is nothing in the record or report indicating that any such right was claimed by him.

It is plain that the assignee in insolvency, after Cooke became an insolvent debtor, had an interest in the suit, as the assignment vested in the assignee, not only all the property of Cooke which he could " have lawfully sold or conveyed," but also all property " which might have been taken on execution upon a judgment against him." Pub. Sts. *c.* 157, § 46. *Bingham* v. *Jordan*, 1 Allen, 373. The Superior Court, on being informed of Cooke's insolvency and of the appointment of an assignee, should have required the assignee to be summoned in and made a party, unless he voluntarily appeared. The error in this respect was, however, ultimately cured by the admission of the

assignee as a party. The assignee was admitted for the purpose of trying the cause upon its merits. Although the court had refused to vacate the final decree against Cooke, or the decree taking the bill for confessed against him, still the assignee so far as his interest was concerned was entitled to try the case upon the merits involved in the issue joined upon his answer, in the same manner as if he had appeared in the suit before these decrees against Cooke were entered. The assignee did not take merely Cooke's title *pendente lite.* He took all the property which was the subject matter of the suit on which an execution against Cooke could lawfully have been levied, or which Cooke could lawfully have conveyed at the time the assignment in insolvency took effect; and his position in the case might be adverse to that of the insolvent debtor. If it be assumed, which is not clear, that the frame of the bill is such that, on a decree taking it for confessed against Cooke, a decree could be entered that the plaintiff recover any money of Cooke personally on which an execution could issue against Cooke's body or estate, the amount would necessarily depend upon the amount of the whole indebtedness of Cooke to the plaintiff under the contract, after deducting whatever amount was ordered to be paid to the plaintiff out of the funds in the hands of the clerk, and any change in either of these two amounts would change the amount which the plaintiff would recover against Cooke personally. The necessary effect of admitting the assignee to defend the suit upon its merits was to suspend the original decree against Cooke, if it did not actually vacate it, and the decree finally entered, although it purports to modify the original decree, in effect vacates it, except that part of the decree which dismisses the bill and supplemental bill as to all the defendants but Cooke, and dismisses the cross bill. Indeed, the original decree did not define the amount for which execution should issue against Cooke, and ought not to have been entered in the form in which it was entered. After the assignment in insolvency, if the assignee claimed the property, Cooke had no interest in it except to have it properly applied in payment of his debts, unless there was a remainder which should be paid to him, and no other interest in the suit except to prevent the plaintiff from obtaining a personal decree against him.

If it was material to the rights of the assignee to show that Cooke had not violated the terms of the contract, and that the plaintiff did not rightfully take possession of the goods on November 28, 1884, he should have been permitted to prove these facts, in the same manner as a creditor who had levied an execution against Cooke upon the property might prove them. The assignee is not so far in privity with Cooke that a decree against Cooke would be conclusive upon the assignee.

For the same reason, if the evidence offered that Cooke never consented to the plaintiff's taking possession, and refused any such consent, was material, it should have been admitted; but, as we read the bill, it contains no allegation of any such consent, and is to be construed to mean that the plaintiff took possession without the consent of Cooke, and that Cooke refused to release any rights he had in the property.

There seem to have been no exceptions taken to the findings of the court upon the original indebtedness of Cooke to the plaintiff under the contract, or to the amount of the payments made by Cooke to him. The value of the goods which had been purchased by Cooke of other persons than the plaintiff, and which were included in the goods of which the plaintiff took possession on November 28, 1884, is not found, although the court finds that they constituted a large portion of the goods. The court also finds that the amount of goods purchased by Cooke in September, October, and November, 1884, on credit, the bills of which remain unpaid, was $6467.84, and that the greater part of these goods were in the store on November 28, 1884. Fraud, either at common law or under the statutes relating to insolvency, is not set up in the answer.

The two questions in the case are what the rights of the plaintiff and of the assignee to these goods or the proceeds of them are, assuming that the plaintiff took possession of them on November 28, 1884, for an alleged breach of the contract, and how these rights are affected, if the fact was that there was then no breach of the contract by Cooke.

The contract is of a sale of a stock of goods by the plaintiff to Cooke for the sum of $14,214.94, and a delivery of possession to Cooke, "with full power and authority to manage, deal with, and sell the same, in the regular course of business as a retail

dealer in dry goods," and it provides " that for the security of said Blanchard the legal title in said goods shall be and remain in said Blanchard until said sum of $14,214.94, with interest at the rate of seven per cent per annum, shall have been fully paid, it being agreed, however, that said title may vest in said Cooke in the proportion to the amount which at any time he shall have paid on account of said $14,214.94, and interest." The clause cited then proceeds as follows : " said Cooke hereby covenanting and agreeing that said Blanchard shall be the legal owner of a fractional part of the stock of goods in said store, whether it be these goods or goods subsequently purchased by said Cooke, which fractional part shall at all times bear the same proportion to the balance of $14,214.94, and interest, then unpaid and due from said Cooke, that the whole amount of goods now bears to said sum of $14,214.94."

This contract cannot be considered as a legal mortgage either of the goods bought of the plaintiff or of the goods subsequently bought of other persons. It does not purport to convey to Cooke the title in the stock of goods that belonged to the plaintiff, and then to reconvey that title in mortgage to the plaintiff. As to this stock of goods, it purports to be a conditional sale, whereby the title to a fractional part of the goods shall vest absolutely in Cooke upon payment of portions of the amount due.

As to the after-acquired goods, the contract operates only by way of covenant ; it does not purport to be a present convey-ance to the plaintiff of the title, defeasible upon the performance by Cooke of his part of the contract. The assignee in effect con-cedes that the plaintiff is entitled to his fractional part of such of the goods sold by him as were on hand when he took possession. Under this conditional sale, if Cooke did not comply with the conditions of purchase, the plaintiff had the right to take posses-sion of such of the original stock of goods as could be identified, either as owner or as owner in common with Cooke ; and whether he took possession or not, his legal title remained. The plaintiff contends that he is entitled to the whole of the goods as security that his debt be fully paid. The contract must be enforced according to the intent of the parties as expressed in it, and we think that, construing all its provisions, it was the intention that the plaintiff should have a fractional share if Cooke made

payments on account; and that this share is to be determined by ascertaining the amount due the plaintiff on November 28, 1884, when he took possession, computing it with interest at the rate of seven per cent, according to the Massachusetts rule when partial payments have been made. *Dean* v. *Williams,* 17 Mass. 417. If the amount thus computed equals or exceeds $14,214.94, then the plaintiff is entitled to all the proceeds of the goods which are a part of the original stock; if the amount is less than $14,214.94, then the plaintiff is entitled to a fractional part, of which fraction $14,214.94 is the denominator and the amount thus found due him is the numerator, and the assignee of Cooke is entitled to the remaining fractional part. Whatever the plaintiff receives of these proceeds, he receives as security for the payment of his debt. The provision that " Blanchard shall be the legal owner of a fractional part of the stock of goods in said store, whether it be these goods or goods subsequently purchased by said Cooke, which fractional part shall at all times bear the same proportion to the balance of $14,214.94, and interest, then unpaid, and due from said Cooke, that the whole amount of goods now bears to said sum of $14,214.94," if construed literally, states ratios of equality. By transposing two of the terms, the clause becomes intelligible, and it then would read, " Blanchard's fractional part shall at all times bear the same proportion to the whole amount of goods as the balance of $14,214.94, and interest, then unpaid, bears to $14,214.94." This seems to us the intention of the parties, and is the view taken by the Superior Court, as we understand the report.

The principal contest in the case is as to the rights of the parties to the proceeds of the goods bought by Cooke of other persons than the plaintiff after the plaintiff's sale to him. By the agreement, Cooke covenants that the plaintiff shall be the legal owner of the same fractional part of these goods as of the goods bought of the plaintiff. That such a covenant would be inoperative to transfer the title to the plaintiff as against an attaching creditor of Cooke, or his assignee in insolvency, if the plaintiff had not first taken possession, seems certain. *Pettis* v. *Kellogg,* 7 Cush. 456. *Potter* v. *Boston Locomotive Works,* 12 Gray, 154. *Huntington* v. *Clemence,* 103 Mass. 482. *Chase* v. *Denny,* 130 Mass. 566. *Wilson* v. *Russell,* 136 Mass. 211.

The effect of mortgages of after-acquired chattels has been considered in *Jones* v. *Richardson*, 10 Met. 481 ; *Rowley* v. *Rice*, 11 Met. 333 ; *Moody* v. *Wright*, 13 Met. 17 ; *Barnard* v. *Eaton*, 2 Cush. 294, 303 ; *Chesley* v. *Josselyn*, 7 Gray, 489 ; and *Howe* v. *Freeman*, 14 Gray, 566, 577. It was held in the early cases, that at law a mortgage of chattels does not convey property of which the mortgagor was not the owner at the time of the conveyance. *Jones* v. *Richardson*, *ubi supra*, was an action at law, and the question was of title to after-acquired goods, as between a mortgagee and an attaching creditor. The mortgagee offered to prove that he had taken possession of the goods for the purpose of foreclosing his mortgage. The court said : " But although the mortgagee, with such a power [a power to take possession of all the goods, including those afterwards acquired], would be justified in seizing the goods of the mortgagor, purchased by him subsequently to the date of the mortgage, it would not vest the property in the mortgagee." 10 Met. 492. The mortgagee " did not prove, nor offer to prove, any act done by the mortgagor, after the mortgage deed was executed, by which he ratified the same as to the subsequently acquired property. All he offered to prove was, that he had taken possession of the goods before the attachment. But this evidently was irrelevant." 10 Met. 493. " As to such property, the mortgage could not be valid, except as between the parties thereto, unless such goods were delivered by the mortgagor to the mortgagee, with the intention to ratify the mortgage, and the mortgagee retained open possession of the same until the time of the attachment." 10 Met. 493, 494. " The record of the mortgage deed is no sufficient notice of a legal incumbrance as to subsequently acquired property." 10 Met. 493.

A delivery to the mortgagee, or a taking possession by him with the consent of the mortgagor, before the attachment, when the mortgagee retained possession, was held in *Rowley* v. *Rice*, *ubi supra*, to give to the mortgagee, either as a pledgee or as a mortgagee, the right to hold the goods as against an attaching creditor. See also *Codman* v. *Freeman*, 3 Cush. 306, 309.

In *Moody* v. *Wright, ubi supra*, which was a suit in equity under the St. of 1838, *c.* 163, § 18, the mortgagee had not taken possession, and it was held that the mortgage was void as against

an assignee in insolvency. The reason given is "the want of any binding original contract, which *per se* could have force and effect to change the after-acquired property, without some further act by the parties, after the property should have come into existence. Such act we deem to have been necessary to perfect the title of the petitioner, whether his rights of property in such after-acquired articles are sought to be enforced in equity or at law." And it is said further: "A stipulation that future-acquired property shall be holden as security for some present engagement is an executory agreement of such a character that the creditor with whom it is made may, under it, take the property into his possession, when it comes into existence, and is the subject of transfer by his debtor, and hold it for his security; and whenever he does so take it into his possession, before any attachment has been made of the same, or any alienation thereof, such creditor, under his executory agreement, may hold the same."

In *Chesley* v. *Josselyn, ubi supra,* it was said, "Whatever may be the agreement between the parties, the mortgage cannot bind property subsequently acquired, without some further act of assurance or ratification."

In *Chase* v. *Denny, ubi supra,* the dictum declared in *Moody* v. *Wright* was recognized and enforced in an action at law. The rule was stated to be, that if "the after-acquired property is taken by the mortgagee into his possession before the intervention of any rights of third persons, he holds it under a valid lien, by the operation of the provision of the mortgage in regard to it." The taking of possession is the assertion of a right which had been previously acquired by the mortgagee, and it could be asserted after the mortgagor had become actually insolvent, if the rights of third persons had not intervened.

In *Brett* v. *Carter,* 2 Lowell, 458, it was decided that a mortgage of after-acquired chattels, which we infer had been duly recorded, was good against an assignee in bankruptcy, although it does not appear that possession had been taken by the mortgagee; and it was suggested that this court might reverse the decision in *Moody* v. *Wright.* Judge Lowell followed the decisions in England, and in some of the States of this country, and cites the case of *Mitchell* v. *Winslow,* 2 Story, 630, which

this court had refused to follow. But in *Mitchell* v. *Winslow* it ought to be noticed that the deed was duly recorded, although this is perhaps immaterial, and that the mortgagee took actual possession of, and sold, the property before proceedings in bankruptcy were begun; and although the assignee in bankruptcy acquired only the rights of the debtor, while an assignee in insolvency acquires something more, yet the result reached in that case is in accordance with the dictum in *Moody* v. *Wright*, and with our decision in the present case.

The recent decisions of this court show no disposition to extend the law beyond the dictum declared in *Moody* v. *Wright*, or to adopt the principles for which the case of *Holroyd* v. *Marshall*, 10 H. L. Cas. 191, is the leading authority. In this Commonwealth, a sale of personal chattels is not good against creditors, unless there has been a delivery. An unrecorded mortgage of personal chattels is void against creditors, unless the property is delivered to and retained by the mortgagee, and a pledge of chattels is equally void, unless the pledgee retains possession. An executory agreement to sell such chattels as are usually bought and sold in the market is not one that is specifically enforced, and it does not create a trust. Besides, the English statutes of bankruptcy give some relief by vesting in the trustee in bankruptcy property of which the bankrupt is the reputed or ostensible owner with the consent of the true owner, a doctrine unknown to our law. The facts in the case at bar show that contracts for security on after-acquired chattels may operate as traps to catch other creditors, even when no fraud is intended; and we are satisfied with the rule that to enable a mortgagee, as against an attaching creditor or an assignee in insolvency, to hold chattels acquired after the execution of a mortgage, there must be a delivery to him, or possession must be rightfully taken by him, and the possession acquired in either manner must be retained until the chattels have been attached or levied upon by creditors, or until proceedings in insolvency are begun. The only apparent change in our decisions is, that by the recent cases possession of after-acquired chattels rightfully taken by a mortgagee under the power contained in the mortgage, if the possession is retained, vests the title in the mortgagee as against third persons, and a delivery by

the mortgagor is no longer held to be essential.  In the cases
cited, except perhaps *Rowley* v. *Rice*, the mortgages were in
fact duly recorded; but this does not appear to have been con-
sidered material, except upon the question of fraud.  The record
of a mortgage of after-acquired chattels has never been held
sufficient to make the mortgage valid against other persons than
the parties to it.  Such a mortgage has not been considered to
be within the provisions of the statutes relating to the record of
mortgages.  *Jones* v. *Richardson, ubi supra.*

In the present case the contract is not a mortgage, and it was
not recorded, and there is no express provision that the plaintiff
may take possession for breach of the contract.  No actual
fraud is alleged, and we cannot say that the contract on its face
is fraudulent and void as to creditors.  A mortgage is not void
as matter of law because it permits the mortgagor to remain in
possession and sell the goods in the ordinary course of business.
Such a provision is at most only evidence of a fraudulent pur-
pose, and we think that the same principle applies to this con-
tract.  *Fletcher* v. *Powers*, 131 Mass. 333.

As the effect of the contract is that Cooke covenants that the
legal title to a fractional part of the after-acquired goods shall
vest in the plaintiff as security for the payment of the debt due
to him, the plaintiff's position even in equity ought not to be bet-
ter than if he held an unrecorded mortgage of these after-acquired
goods as security for the debt; and a mortgage of after-acquired
goods cannot in any event give a better title than a mortgage
of goods belonging to the mortgagor when the mortgage is
executed.  Our statutes concerning mortgages of personal chat-
tels provide that, " unless a mortgage is recorded as aforesaid
within fifteen days after the date thereof, or unless the property
mortgaged is delivered to and retained by the mortgagee, the
mortgage shall not be valid against any person other than the
parties thereto, except as is hereinafter provided."  Pub. Sts.
*c.* 192, § 1.  An assignee in insolvency is not one of the parties
within the meaning of the statute.  The limitation of the time
of record was first enacted in the St. of 1874, *c.* 111, § 1, (see
St. 1875, *c.* 14,) and, before this statute, it was sufficient if the
record was made at any time before the rights of third persons
had intervened.  *Mitchell* v. *Black*, 6 Gray, 100.

We think that the limitation of time within which a mortgage must be recorded to make the record effectual does not apply to the time within which mortgaged property, if the mortgage is unrecorded, must be delivered to and retained by the mortgagee, and that it is sufficient if the property is delivered to the mortgagee before, and is retained by him until, the rights of third persons have attached. *Carpenter* v. *Snelling*, 97 Mass. 452. *Wright* v. *Tetlow*, 99 Mass. 397. In *Wright* v. *Tetlow*, it is said that " the manifest intention of the Legislature was, to require in the case of an unrecorded mortgage of chattels such delivery of possession as would be necessary in the case of an absolute sale, which need not be recorded." In the case of the sale of a chattel which is identified, the title to which has passed as between the parties and upon which the vendor has no lien for the price, and which it is the duty of the vendor to deliver immediately to the vendee, we are not aware that it has ever been held that possession rightfully obtained by the vendee, and retained by him, did not constitute a delivery as against third persons, although the vendor had done no acts indicating an intention to deliver. Our recent decisions have therefore proceeded upon the theory, which by a dictum in *Jones* v. *Richardson, ubi supra,* was denied, that when the chattels are acquired, and are identified by the terms of the mortgage, the title passes as between the parties, and a possession rightfully obtained by the mortgagee, and retained by him, vests the title in him as against third persons whose rights have not attached before the possession is taken, and that delivery by the mortgagor is not necessary; and in the case of informal instruments not technically mortgages, and not recorded, this has been distinctly decided. *Mitchell* v. *Black, Wilson* v. *Russell,* and *Chase* v. *Denny, ubi supra.* See *Huntington* v. *Clemence, ubi supra.*

Following the analogy of these cases, if the contract between the plaintiff and Cooke was not actually fraudulent and void as against the creditors of Cooke, either at common law or under the statutes relating to insolvency, and if the plaintiff rightfully took possession of the goods before they were attached, or before proceedings in insolvency were instituted, and retained this possession, we think his title, to the extent of his interest, is good

against the assignee in insolvency. This is, in effect, the ruling of the Superior Court. But the plaintiff's possession must be rightful in order to enable him successfully to assert his title against the assignee. If he had no right to take possession when he took it, his possession cannot avail him. Our construction of the contract is, that the plaintiff had not the right to take possession unless there had been some breach of the contract by Cooke; but, if there had been a substantial breach, that the plaintiff had this right while the default continued. The plaintiff would have this right in regard to the goods he sold to Cooke, if Cooke did not pay for them as agreed, and we think the intention was to give him the same right in regard to the goods subsequently purchased. The evidence offered by the assignee, "that there had been no breach of said contract by said Cooke on or before November 28, 1884," should therefore have been admitted. The plaintiff's title to that part of the original stock which can be identified has not been lost, whether he rightfully took possession or not.

The decree entered on January 11, 1886, except that part of it which dismisses the cross bill, and dismisses the bill and supplemental bill as to all the defendants but Cooke, is reversed, and the final decree entered on June 2, 1886, is also reversed. As the decrees are reversed, Cooke is to have leave to plead his discharge in insolvency, and to be heard upon it. It is in the discretion of the Superior Court whether the decree taking the bill for confessed against Cooke be vacated or not, and whether any of the parties be permitted to amend their pleadings. The cause is remanded to the Superior Court for further proceedings in accordance with this opinion.            *So ordered.*