HUDSON *v.* McKALE.

CONDITIONAL SALE—AFTER-ACQUIRED PROPERTY—LIEN OF VENDOR —CHATTEL MORTGAGE.

A contract for the sale of a stock of goods, reserving title in the vendor until payment of the purchase price, and providing that goods purchased to replace those destroyed, " as well as all others used in the business," shall be subject to the lien of the agreement, operates, as to property subsequently acquired, as a mortgage, and, unless filed as required by 2 How. Stat. § 6193, is to that extent void as to creditors of the vendee.[1]

Error to Ingham; Person, J. Submitted October 12, 1895. Decided October 22, 1895.

Replevin by Lester S. Hudson against William H. McKale for goods seized on attachment as the property of a third party. From a judgment for plaintiff on verdict directed by the court, defendant brings error. Reversed.

*William A. Fraser (Sloman, Groesbeck & Robinson,* of counsel), for appellant.

*M. V. & R. A. Montgomery,* for appellee.

---

[1] The Michigan cases upon the subject of conditional sales are collected in a note to *Pettyplace* v. *Manufacturing Co.,* 103 Mich. 160. For cases determining the character of an instrument, as a mortgage or otherwise, see note to *Damm* v. *Mason,* 98 Mich. 237. As bearing upon the construction of section 6193, see *Watson* v. *Mead,* 98 Mich. 330, and note.

MONTGOMERY, J.  Plaintiff was, prior to the 15th day of August, 1892, the owner of the stock and fixtures in a saloon in the city of Lansing.  On that day he made a conditional sale of the property to one C. M. Webb.  The contract provided that the title to the property should remain in the plaintiff until the purchase price was paid.  One-half the consideration was paid down, and the rest was to be paid in installments.  The contract, which was signed by both parties, contained the following provisions:

" Said second party does severally agree to pay said first party the full and true sum of four thousand ($4,000) dollars, and the interest herein provided, according to the terms of this agreement; to use with care the property hereby intrusted to his care and use; to replace such of said property as is broken or destroyed; and to submit such substituted goods, as well as all others used in the above business, property, and chattels, to the lien and operation of this agreement."

After the purchase, Webb continued the business at the old stand, but in his own name, and bought goods on credit.  Among others who sold him goods were Sloman & Co., who caused a levy to be made by the defendant, as constable, on goods purchased in the name of Webb, and shipped to him, and received into the saloon.  Plaintiff brought replevin.  On the trial the circuit judge directed a verdict for the plaintiff, and defendant brings error.

The circuit judge evidently treated the agreement that all stock purchased by Webb should become the property of Hudson as a sale of the property to Hudson; and, there being no evidence that there was fraud in fact on the part of Hudson, the court held that the rights of the parties were governed by section 6190, 2 How. Stat., and that the title passed.

Section 6193, 2 How. Stat., provides that every mortgage, or conveyance intended to operate as a mortgage, which shall hereafter be made, which shall not be accompanied by an immediate delivery, and followed by an

actual and continued change of possession, shall be absolutely void, as against creditors of the mortgagor, unless the mortgage or a copy of it be filed, etc. As to instruments falling within its terms, this latter section has superseded section 6190. *Cooper* v. *Brock*, 41 Mich. 491. We are agreed that this instrument was one which, as to the property subsequently acquired by Webb, was intended to operate as a mortgage. There is no pretense that Hudson was to acquire any title, except as security for a debt, nor can it be contended that his title would continue after the debt was paid. It is true, this court has gone far in sustaining conditional sales reserving title in the original owner, but to sustain plaintiff's contention here would open a door to great injustice, and would be going a step beyond any ruling which this court has ever made. If this contention should prevail, one might make a sale of a single bale of cotton cloth to a merchant, and by contract acquire a secret title to all goods thereafter placed in stock, while, as to the general public, the stock might appear to be free from all incumbrances.

The case of *Blanchard* v. *Cooke*, 144 Mass. 207, cited by plaintiff's counsel, does not support his contention. In that case the plaintiff had taken possession of the goods before any lien attached in favor of creditors. The court held it to be sufficient to make the mortgagee's lien effectual "if the property is delivered to him before, and is retained by him until, the rights of third persons have attached." But it was said in the case, distinctly:

"As the effect of the contract is that Cooke covenants that the legal title to a fractional part of the after-acquired goods shall vest in Blanchard as security for the payment of the debt due to him, Blanchard's position, even in equity, ought not to be better than if he held an *unrecorded* mortgage of these after-acquired goods as security for the debt; and a mortgage of after-acquired goods cannot, in any event, give a better title than a mortgage of goods belonging to the mortgagor when the mortgage is executed."

This latter reasoning we deem sound; but, while it is not necessary to a decision of this case, it is proper to say that the ruling upon which *Blanchard* v. *Cooke* would appear to have turned is not in harmony with the holdings of this court in *Fearey* v. *Cummings*, 41 Mich. 376; *Waite* v. *Mathews*, 50 Mich. 392; and *Crippen* v. *Jacobson*, 56 Mich. 386.

The judgment will be reversed, and a new trial ordered.

The other Justices concurred.