Paul F. MARKHAM, as he is Trustee for the Bankruptcy Estate of Louis Almeida, Plaintiff,

v.

Claire M. FAY, Individually and as Trustee of the Highland Avenue Nursing Home Trust, the Parker Hill Nursing Home Trust, and the Green Pastures Nursing Home Trust, Regina Nursing Home, Inc., the United States of America; Richard H. Gens, Joseph Wine, P.C., Defendants.

Civil Action No. 91–10821–RWZ.

United States District Court, D. Massachusetts.

July 9, 1996.

Patrick P. Dinardo, Sullivan & Worcester, L.L.P., Boston, MA, for plaintiff.

Deborah A. Beard, Boston, MA, George P. Eliopoulos, U.S. Department of Justice, Tax Division, Washington, DC, Susan M. Poswistilo, United States Attorney's Office, Boston, MA, and William E. Gens, Boston, MA, for defendants.

**670**

### MEMORANDUM RE: AMENDED JUDGMENT TO BE ENTERED IN ACCORDANCE WITH THE MANDATE OF THE COURT OF APPEALS FOR THE FIRST CIRCUIT

COLLINGS, United States Magistrate Judge.

### INTRODUCTION

The historical facts shall be recited in summary fashion for contextual purposes.[1] This is an interpleader action commenced by the trustee in bankruptcy of the debtor, Louis Almeida; at issue, a determination of the rights of various claimants to an interpled fund of approximately $70,000 representing mortgage payments due from Almeida to the defendants Highland Avenue Nursing Home Trust, Parker Hill Nursing Home Trust, Green Pastures Nursing Home Trust and Regina Nursing Home, Inc. The debtor, Almeida, had purchased a number of nursing homes from these defendants, as well as other entities controlled by defendant Claire M. Fay (hereinafter "Fay"), executing notes and mortgages as payment of the purchase prices. These mortgages constituted the only assets of the trusts.

The defendant, the United States of America (hereinafter "United States"), asserted an interest in the interpled fund by virtue of federal tax liens against Fay resulting from tax assessments made against her under 26 U.S.C. § 6672. The premise of the government's claim was that Fay retained such power and control over the trusts that her tax liabilities could be satisfied out of her interest in the assets of the trusts.

Following a non-jury trial, the Court issued findings of fact, which were undisputed on appeal, and conclusions of law thereon in accordance with Rule 52(a), Fed.R.Civ.P. Inter alia, it was noted that Fay was the settlor, trustee and a beneficiary of each of the defendant trusts. With respect to the Parker Hill Nursing Home Trust and the Green Pastures Nursing Home Trust, both of which were created by identical declarations of trust, it was decided that Fay reserved such pervasive powers to herself under the trust documents that the trust assets were considered to be her own as a matter of law. The same conclusion was reached vis-a-vis the Highland Avenue Nursing Home Trust even though the declaration of trust incorporated different, but similar, provisions. It followed from these determinations that the United States, as a creditor of Fay, could properly reach the assets of the trusts, essentially the interpled fund, to satisfy Fay's tax liability.

In her capacity as trustee of the three nursing home trusts, Fay appealed. The First Circuit affirmed with regard to the Parker Hill Nursing Home Trust and the Green Pastures Nursing Home Trust, but reversed and remanded on the Highland Avenue Nursing Home Trust. At the outset, the Court noted that when the taxes were assessed against Fay, by statute "a federal tax lien arose 'upon all property and rights to property, whether real or personal, belonging to' Fay. 26 U.S.C. §§ 6321, 6322." *Markham v. Fay*, 74 F.3d 1347, 1355 (1 Cir., 1996). The Court went on to find there was error in concluding that the terms of the Highland Avenue Nursing Home Trust endowed Fay with such powers, rights and interests as to give her the ability to treat the principal and income of the trust entirely as her own. *Id.* at 1360. However, it was decided that "[t]he (tax) lien does, however, attach to whatever aspect of Fay's beneficial interest in the Highland Avenue Nursing Home Trust that constitutes present 'property or rights to property' under Massachusetts law." *Id.* at 1363 (footnote omitted). More precisely,

> Because 'a settlor cannot place property in trust for his own benefit and keep it beyond the reach of his creditors,' Fay's 'creditors can reach the maximum amount which the trustee under the terms of the trust could pay to [her] or apply for [her] benefit.'

---

[1] This narrative is gleaned largely from the government's statement of the case in its post-appeal brief with which Fay concurs. *See,* United States' Post–Appeal Brief # 157 at pp. 1–5, Defendant's Opposition to United State's (sic) Post–

Appeal Brief # 159 at p. 1. For a complete and detailed rendition of the facts of this case, *see Markham v. Fay*, 884 F.Supp. 594, 596–602 (D.Mass., 1995), aff'd in part, rev. in part and remanded, 74 F.3d 1347 (1 Cir., 1996).

ee for a service charge of that amount of interest to bring it to eleven (11%) percent of the unpaid balances so that eleven (11%) percent shall be due and payable on the outstanding unpaid balance of each mortgage payable through or to the seller. Additionally, if there is an existing mortgage encumbering the property where the interest is more than eleven (11%) percent, the seller or the third mortgagee shall still receive from the buyer the eleven (11%) percent.

Amended Agreement, Trial Exh. 3D.

Almeida defaulted on these obligations [2], and, in 1978, filed for bankruptcy. The $16,046.63 at issue, part of the proceeds of the bankruptcy trustee's sale of assets, represents essentially the sole "payment" made by Almeida under the terms of the amended agreement.[3]

The United States argues that under Massachusetts law the $16,046.63 payment on the mortgages held by the Highland Avenue Nursing Home Trust represents a payment of interest, not principal. As interest, such a payment would be income or earnings to the trust. Pursuant to the provisions of the trust instrument, the trustee, Fay

> may from time to time, but not less frequently than once a year, make disposition to the beneficiaries out of the net earnings of the trust estate of such sum and sums in cash as she shall see fit in the proportion to the shares owned by the beneficiaries.

Record Appendix at p. 64.

Being one of four named beneficiaries in equal shares, Fay had a 25% proportional interest in the net earnings of the trust. As trustee, Fay was empowered to distribute to herself as beneficiary, and to the other three beneficiaries in proportionate share, any or all of the net earnings of the trust at least on an annual basis.

Under Massachusetts law, interest payments on a mortgage note are considered income to a trust. *Hayward v. Blake*, 247 Mass. 430, 432–33, 142 N.E. 52, 53 (1924). Moreover,

> It has long been the rule in this Commonwealth that, absent any express agreement to the contrary, partial payments on an interest bearing debt are applied first to the interest due, with any excess payment to be applied to reduce the principal debt. Indeed, in *Blanchard v. Cooke*, 144 Mass. 207, 222, 11 N.E. 83 (1887), this method of applying partial payments is called "the Massachusetts rule".

*Plasko v. Orser*, 373 Mass. 40, 42–43, 364 N.E.2d 1220, 1222–23 (1977) (citations omitted).

Neither of the notes at issue incorporate any "express agreement" to depart from the "Massachusetts rule". The opposite is true: the notes provide for the payment of "interest at the rate of eleven (11%) per centum per annum, **during said term, and for such further time as said principal sum, or any part thereof, shall remain unpaid.**" Amended Agreement, Trial Exh. 3 (emphasis added). The plain implication of this language is that payments would first be applied to unpaid interest; to apply such payments first to principal would undercut the further accrual of interest.

Under the "Massachusetts rule", the entire $16,046.63 would be viewed as interest on the mortgage notes, and, consequently, income to the Highland Avenue Nursing Home Trust. Fay does not dispute the government's statement that this fund would represent unpaid interest for about the first year of the mortgage. Given that the property was sold by Fay and the mortgage and notes taken back in September, 1976 [4], and Almeida did not file for bankruptcy until 1978, at the time that the debt was frozen by the bankruptcy

---

2. From all that appears, Almeida made few, if any, payments on these notes and mortgages.

3. According to the United States, as of February 20, 1996, the total outstanding balance on the subject mortgages would amount to approximately $946,087, consisting of $122,349.19 of principal and $823,737 in unpaid interest. The February 20th date is significant because on that

date the Highland Avenue Nursing Home Trust was amended to remove Fay as a beneficiary.

4. For the sake of clarity, it is noted the nursing home was conveyed in June, 1976. However, reference throughout has been made to the Amended Agreement dated September 8, 1976, pursuant to which the relevant mortgages and notes were given.

proceedings, well over one year of interest payments were due and owing to the trust. The sum of the interest due and owing at the time of the bankruptcy filing exceeds the amount of interpled fund, i.e., $16,046.63. Thus, Fay's argument that the filing of bankruptcy halted the accrual of interest is immaterial, as is the government's contention that the two mortgage notes would have accrued over $800,000 in interest to date.

█ Fay also contends that the government's position with respect to the characterization of the impleaded fund as interest, and thus income to the trust, is incorrect under federal tax law. Fay's argument quite simply is inapplicable to the issue at hand; the matter is governed by state law. *Markham,* 74 F.3d at 1355–56.

Finally, although the United States argues at some length that the recent amendment to the Highland Avenue Nursing Home Trust whereby Fay was removed as a beneficiary does not vitiate its right to the fund, Fay herself advances no such argument. Moreover, neither party argues that the removal of Fay as a beneficiary of the trust in any way implicates the government's right to 25% of the interest earned on the fund. Indeed, it is the defendant's position that the Court should "award[ ] the government Fay's right to the interest accrued on the Trust corpus, which is twenty five percent (25%) of the interest earned on the Highland Avenue Nursing Home's bankruptcy award of $16,-046.63." Defendant's Opposition, # 159 at p. 2–3.

## *CONCLUSION*

Under Massachusetts law, the fund of $16,-046.63 is considered to be a partial payment on the outstanding interest bearing debt. As such, it would be applied to the interest due and owing under the notes, rather than to principal. As interest, the monies would constitute income to the trust. Thus, the United States is entitled to recover 25% of the fund itself, as well as the 25% of the interest that has accrued on the fund since it was interpled upon which the parties agree, that amount representing "Fay's present right to receive annual distributions from net earnings in proportion to her share." An Amend-

ed Judgment reflecting these conclusions shall enter this date.