## Levi Wilson *vs.* Edward J. Russell.

Worcester.   Oct. 4, 1883. — Jan. 1, 1884.   Field & W. Allen, JJ., absent.

An agreement between A. and B., reciting that A. had lent to B. certain sums of money to enable him to carry on the business of canning fruits, and that B. desired further sums for the same purpose, and to secure B. therefor, contained the following terms: A. was to advance money, not exceeding a certain amount, for the purpose of enabling B. to purchase fruit and materials, and pay all expenses of canning and preparing the same for market, until the end of the canning season; "and when the process is completed, then the entire stock in trade of B. is to be the property of A.; is to be conveyed to him by good and sufficient bill of sale, renewed and delivered to A. every thirty days during said season;" and the money realized from the whole or part of the stock in trade was to be paid over to A., except such sums as might be necessary to defray the expenses of the business, until the whole amount advanced, and interest, should be paid; and in case B. should neglect or refuse to conduct the business according to the terms of the contract, A. might terminate the contract, and take possession of all the goods, effects, and credits of B., sell the same, and account to B. for any surplus remaining after the payment of the advances and interest. *Held,* that, at the end of the canning season, the title to the goods remained in B., unless A. had acquired title by a bill of sale or by taking possession.

An agreement was made between A. and B., by which A. was to have the right to take possession of the goods of B., and sell them to pay a debt of B. to A. At the time the agreement was made, B. kept the goods in a certain store, from which a portion was afterwards moved to a new store. A. went to the new store and told B. that he had a right to take possession and did take possession, put B. in as keeper, and directed him to sell the goods for A. B. agreed to do it. *Held,* that this was a sufficient taking possession of the goods in both stores, to entitle A. to maintain replevin against an officer who subsequently attached the goods in the old store as the property of B. *Held, also,* that the fact that B. made no objection when the officer took possession of the goods did not affect A.'s right to maintain the action.

Replevin of a stock of merchandise, consisting of preserves, jellies, and canned goods.   Writ dated February 27, 1882.

At the trial in the Superior Court, before *Staples,* J., there was evidence tending to show that, on January 22, 1881, the plaintiff lent to A. N. Fairbank $400, to enable him to buy a stock of canned goods, and took a promissory note, and a mortgage on the stock as security for the debt; that Fairbank took one O'Hara into partnership with him, and, prior to July 5, 1881, the new firm, desiring money with which to buy materials and to pay the expenses of the business, applied to the plaintiff therefor, and he agreed that, upon satisfactory security being given, he would advance money to the firm from time to time,

to enable it to carry on its business; that, on said July 5, both partners assumed the balance due on the note, and the plaintiff lent them an additional sum, and it was agreed that the old note and mortgage should be delivered up, which was done, and a new agreement was drawn up, by which the plaintiff was to hold the stock of the firm as security for his advances, which agreement the plaintiff refused to accept; that Fairbank then assigned, as security, a policy of insurance on his life to the plaintiff; that thereafter, from time to time, between that day and September 2, 1881, the plaintiff advanced to the firm further sums, amounting in all to $978; and, not being satisfied with the security, caused the following agreement to be drawn up, which was executed by Fairbank and by O'Hara:

"Memoranda of an agreement made and entered into this second day of September, A. D. 1881, by and between Levi Wilson, of Uxbridge, county of Worcester, Commonwealth of Massachusetts, of the one part, and A. N. Fairbank and Eugene O'Hara, both of Worcester, in said county, copartners as A. N. Fairbank & Co., of the other part:

"Witnesseth, That whereas said A. N. Fairbank & Co., who are engaged in the business of canning fruits and vegetables, have received from said Wilson loans of money for the purpose of enabling them to carry on said business, and desire further loans for the same purpose, and desire to secure said Wilson therefor: Now therefore it is mutually agreed by the parties hereto as follows, viz.: The said Wilson is to advance money not exceeding in amount (including the amount already advanced) the aggregate sum of twenty-five hundred dollars, for the purpose of enabling the said Fairbank & Co. to purchase fruit and materials, and pay all expenses of canning and preparing the same for market, until the end of the canning season; and when the process is completed, then the entire stock in trade of said A. N. Fairbank & Co. is to be the property of said Wilson; is to be conveyed to him by good and sufficient bill of sale, renewed and delivered to said Wilson every thirty days during said season, and the money realized from the sale of the whole or any part of said stock in trade is to be accounted for, and paid over to said Wilson, except such sums as may be necessary to defray the expenses of said business, as fast as the

same is collected; all sales to be made for cash, or approved credit, and after said Wilson shall have received from said sales or otherwise the whole amount which he shall have advanced to said Fairbank & Co., together with fifteen per cent of the net profits of the business, as and in lieu of interest for said money so advanced, then he the said Wilson will release and quitclaim to said A. N. Fairbank & Co. all the balance of said stock in trade, and the unappropriated balance of proceeds of sales. The said A. N. Fairbank & Co. to act as selling agents only until said sum shall be paid, and are in no case to use the name or credit of said Wilson in making purchases or otherwise conducting said business. Said Wilson is not a partner of said A. N. Fairbank & Co., and in no way responsible beyond the money advanced to said firm for the purposes aforesaid. And in case said A. N. Fairbank & Co. shall neglect or refuse to conduct said business according to the terms of this contract, and with their best skill and judgment, and do not keep on hand stock in trade of the value of the amount so advanced under this contract, or its equivalent in cash or approved credits, or shall neglect to keep true and accurate books of account open to the inspection of said Wilson at all times, then said Wilson may terminate said contract, take immediate possession of all the goods, effects, and credits of said A. N. Fairbank & Co. without process of law, and sell and dispose of the same at public or private sale, and out of the proceeds pay himself the amount due to him under this contract, with all expenses of keeping, advertising, and selling same, and pay over the balance, if any remains, to said A. N. Fairbank & Co. or their legal representatives. Witness the hands and seals of the parties, this second day of September, A. D. 1881."

There was also evidence tending to show that, upon the execution of the above agreement and its delivery to the plaintiff, the latter delivered to the firm the prior unaccepted agreement and also the assignment of the policy of insurance, and the plaintiff thereupon lent the firm the further sum of $500, and on October 3 advanced to the firm the balance of the $2500 mentioned in the agreement; that the firm began business in Worcester, in a store at No. 1 Summer Street, and continued there until December 20, 1881, when a portion of the stock was moved to a

store on Pleasant Street, and the firm thereafter occupied the Pleasant Street store as its principal sale store, and advertised it in the papers as its place of business; that the Summer Street store was still retained, being used as a storehouse, and goods were also kept and sold therefrom by the mother of O'Hara, as opportunity offered, and Fairbank and O'Hara remained in person at the Pleasant Street store until their failure; that on February 20, 1882, the property still being at the two stores, the plaintiff, being dissatisfied with the conduct of the business by the firm, went to the Pleasant Street store, and, finding both partners present, said to Fairbank, in hearing of O'Hara, that according to their agreement he had the right to take possession, and he, Fairbank, could not sell any more, and that he did so take possession, and put O'Hara in keeper, directing him to sell the goods for the plaintiff, and forbidding Fairbank from selling the same or having anything to do with the property; that O'Hara agreed to do it; and that the canning season closed in November or December.

On February 23, Fairbank and O'Hara filed a petition in insolvency, and the defendant was appointed messenger on February 24, on which day the first publication was made, and on that day the defendant, as messenger, took possession of the property at both stores, having previously, on February 23, taken it as a deputy sheriff, on a writ of attachment against Fairbank and O'Hara, and held it on said writ till he took it as messenger. He caused the stock at Pleasant Street to be moved to the Summer Street store, and put in there with the other stock of the same general character and description, where it remained until the service of the writ in this case, upon which the whole stock in the Summer Street store on February 27 was on that day taken.

Fairbank and O'Hara appeared as witnesses for the defendant, and denied the foregoing evidence relating to Wilson's taking possession. There was evidence that, at the time the defendant attached the goods, he asked for the key of the Pleasant Street store, and it was given to him by the attorney of Fairbank and O'Hara, the latter making no objection.

The only question submitted to the jury was whether actual possession was taken by the plaintiff of the stock in the Pleasant

Street store on February 20, and thereafter kept by him till the stock was taken by the defendant on his writ of attachment, which question the jury answered in the affirmative ; and the judge thereupon directed a verdict for the plaintiff for such portion of the property taken as was manufactured from materials bought with money advanced by the plaintiff after September 2, 1881, irrespective of the store which they were in, and also such portion as was taken possession of by the plaintiff in the Pleasant Street store, not included in the foregoing category, and for the defendant as to the remainder.

The jury returned a verdict accordingly ; and both parties alleged exceptions to certain rulings and refusals to rule, which appear in the opinion.

*W. S. B. Hopkins & F. A. Gaskill*, for the plaintiff.

*D. Manning, Jr. & F. H. Dewey, Jr.*, for the defendant.

C. ALLEN, J. The first request by the plaintiff for instructions to the jury, and the first request by the defendant, related to the same subject, namely, the rights of the plaintiff under the contract, irrespective of possession taken by him. The plaintiff asked the court to rule that, by the terms of the agreement, he was entitled to all the stock in trade, without possession thereof. The defendant, on the other hand, asked for a ruling that the plaintiff, in order to establish a title to any portion of the goods, must prove that he took possession of such goods, and retained the same. We are of opinion that the jury should have been instructed according to the request of the defendant. Prior to the agreement of September 2, the original mortgage to the plaintiff had been given up, and no new written agreement and no distinct and completed oral agreement had been entered into. The plaintiff's title therefore depended solely on the agreement of September 2, under which the stock in trade was not to be his property till the process of canning and preparing for market should be completed. It does not appear to have been understood by the parties that the plaintiff should furnish the entire capital employed. The money advanced by him was treated as a loan, for the purpose of enabling the firm to purchase fruit, vegetables, &c., and the firm with the aid of this money was to go on and prepare the articles, and, after this had been done, a change of title was to be effected by

giving a bill of sale to the plaintiff, or by his taking possession, and until the giving of such bill of sale, or such taking of possession, the title would remain in the firm. *Chase* v. *Denny*, 130 Mass. 566. *Moody* v. *Wright*, 13 Met. 17, 32. On this point, therefore, the plaintiff's exception must be overruled, and the defendant's exception sustained.

The plaintiff also asked the court to rule that there was evidence which would authorize the jury to find that the possession taken by him, as shown by his bill of exceptions, applied to the stock in the Summer Street store, as well as to that in the Pleasant Street store; and this instruction we think ought to have been given. It was not necessary to take an actual manual possession of every article. Possession, like delivery, may be of a part for the whole. The written agreement applied to the whole stock of goods, wherever it might be, and the plaintiff's right to take possession of the whole stock remained the same after the removal of the principal portion of the goods into the new store. Since it was not necessary for the plaintiff to take actual possession of all the goods in detail, it could not be held, as matter of law, upon the evidence, that his act of taking possession of the bulk of them under his. agreement was not intended by him to apply to all the stock in trade which he was entitled to take possession of, or that his act was not so accepted by O'Hara. If the plaintiff went to the Pleasant Street store for the purpose of taking possession, and there, in the presence of both partners, said that under the agreement he had a right to take possession and did take possession, and that Fairbank could not sell any more; and if he put O'Hara in as keeper, with directions as stated in the bill of exceptions, and if by this he intended to exercise all his right of taking possession under the agreement, and to put O'Hara in as keeper of all the goods covered by the agreement, wherever they might be, and if O'Hara accepted the trust, — it cannot be said, as matter of law, that there was no evidence of the plaintiff's taking possession of the goods in the Summer Street store. *Shurtleff* v. *Willard*, 19 Pick. 202, 210. It was a question for the jury to determine whether possession was taken of a part for the whole. *Phelps* v. *Cutler*, 4 Gray, 137. *Ingalls* v. *Herrick*, 108 Mass. 351, 354. *Pratt* v. *Chase*, 40 Maine, 269. The plaintiff's exception on this point is sustained.

In reply to the plaintiff's third request for instructions, the court ruled that there was no evidence to go to the jury of a commingling of the goods by the defendant. The bill of exceptions discloses no facts which show that this ruling was wrong. The court further ruled that the plaintiff could only recover, so far as depended on the question of possession, what he could show was in the Pleasant Street store, and in his actual possession. This ruling would require modification, as already indicated.

The defendant requested a ruling, that if O'Hara, having been appointed keeper by the plaintiff, voluntarily allowed the defendant to take possession of the goods under the attachment, or subsequently as messenger in insolvency, and made no claim that he was holding them for the plaintiff when the defendant took possession, it would be a failure of continuity of possession which would be fatal to the plaintiff's title. This request was properly refused. The plaintiff, by taking possession, fixed his rights, which were not defeated by the act or omission of O'Hara. The defendant took the goods by virtue of his precepts. Until he did so, the plaintiff's rights continued. By his act, the plaintiff's rights were infringed.

*Exceptions sustained.*