### In re WORTH LIGHTING & FIXTURE CO., Inc.

(District Court, S. D. New York. October 13, 1923.)

Banks and banking ⑨9—Factor corporation, advancing money on accounts receivable assigned to it, held not to violate statute prohibiting exercise of banking powers; "evidences of debt;" "discount."

Where factor corporation advanced to bankrupt 75 per cent., less discounts and commissions, of the face value of accounts for goods sold which bankrupt assigned to it, and corporation was to be accountable to bankrupt for all it collected in excess of the 75 per cent., corporation did not violate General Corporation Law, § 22, prohibiting a general corporation from carrying on the business of discounting bills, notes, or other evidences of debt, as this section refers to commercial paper, and the accounts assigned were not "evidences of debt" and were not discounted; "discount" meaning getting the present value of a debt; i. e., its face value less interest.

[Ed. Note.—For other definitions, see Words and Phrases, First Series, Evidence of Debt; First and Second Series, Discount.]

In Bankruptcy. In the matter of the Worth Lighting & Fixture Company, Inc., bankrupt. Petition by trustee to require Shapiro Bros. Factors Corporation to file a statement of all the accounts of bankrupt collected by it, and to turn over the proceeds thereof, and for other relief. Report of special master, denying the relief demanded, confirmed.

The following is the report of Stephenson, Special Master:

This is a petition of Louis B. Wehle, receiver in bankruptcy of the above-named bankrupt, for an order directing Shapiro Bros. Factors Corporation to file in court a full statement of all accounts of the bankrupt collected by it, and each document in which it claims to be assignee of such accounts, to turn over the moneys collected by it on said accounts, and that the said assignment of accounts and the lien of said Shapiro Bros. Factors Corporation be vacated and declared void, and that the same be declared the property of the bankrupt estate, free of incumbrances.

The petition alleges that Shapiro Bros. Factors Corporation (hereinafter referred to as the company), a New York corporation, claims to be pledgee of the bankrupt's open accounts, pursuant to a written instrument dated July 9, 1921; that the bankrupt, pursuant to this insrument, purported to assign

its said accounts, and that at the time of the institution of bankruptcy proceedings the bankrupt was indebted to said company in approximately $23,-000; that since the institution of bankruptcy proceedings the company has collected from the bankrupt's debtors approximately $7,000; that the aforesaid instrument was never filed with the clerk of New York county, or otherwise, and no factor's lien was ever posted on the premises of the bankrupt, as required by section 45 of the Personal Property Law of the state of New York (Consol. Laws, c. 41); that the receiver has collected certain enumerated accounts, all of which are claimed by the company on said purported assignment; that there is annexed to the petition a copy of the accounts receivable, claimed to be so assigned; that merchandise consigned to Peerless Lighting & Fixture Company, of St. Louis, Mo., of the invoiced value of approximately $1,500 has been returned and is now held in storage by the New York Central Railroad Company which merchandise is claimed by the company, and other merchandise which had been consigned to the Crown Electric Company, of St. Louis, Mo., has been similarly returned, and is held in storage by the Pennsylvania Railroad Company. The petition claims that this lien is void and not enforceable against creditors, both as affects merchandise in the premises and any merchandise in storage or in transit; that the accounts created are not subject to any lien or assignment in favor of the company. By a supplemental petition the receiver alleges that Shapiro Bros. Factors Corporation is a business corporation, and had no power to lend money or in any manner conduct a banking business, and that in making advances to the bankrupt, for which it received alleged assignments of accounts, it exceeded its powers, and acted in violation of the banking laws of the state of New York, and that hence such assignments are void and unenforcible.

The answer of Shapiro Bros. Factors Corporation alleges that it claims all the accounts enumerated in the schedule annexed to the petition and the goods which have been returned by the consignees; that the transfers and deliveries of these accounts were made before the bankruptcy, in good faith and for valuable consideration. It also alleges that the proceeds of the accounts collected by the receiver belong to it, and prays for an order dismissing the petition and directing the receiver to pay to it the proceeds of the accounts so collected by him, and also claims to be entitled to the goods returned from the Peerless Lighting Company and the Crown Electric Company, of St. Louis, and now in possession of the carriers.

It appears from the evidence that Shapiro Bros. Factors Corporation is a New York corporation, and that it is not incorporated under or pursuant to the banking laws of the state of New York; that on July 9, 1921, the bankrupt entered into a written agreement with a partnership under the name and style of Shapiro Bros.; that this contract was subsequently transferred to and assumed by Shapiro Bros. Factors Corporation. Under this contract the company agreed to advance to the bankrupt 75 per cent. of the net face value, less discounts and commissions, of all accounts receivable, which were acceptable to and approved by it; to assist the bankrupt in its credit department, supervise the collection of accounts, and render to the bankrupt reports of collections, if necessary. The bankrupt agreed: "As collateral security for all indebtedness due or to become due to the company from the customer (bankrupt) under this or any other contract between them, to assign, transfer, and set over to the company on forms prescribed by it, accompanied by shipping receipts and such other papers as the company may require, each and every account receivable, created in the usual course of his business during the term hereof; not to apply for or procure advances on or sell accounts to any person, firm, or corporation other than the company, and immediately upon such assignment to make an entry upon his books as follows: 'This account assigned to Shapiro Bros.' Bills may be issued in the name of the customer." In the above clause the term "company" means Shapiro Bros. and the term "customer" means the bankrupt in this case. The customer agreed to pay the company certain commissions and necessary expenses in collecting the accounts, and to pay interest at 6 per cent. per an-

num upon all advances charged to the customer, and the company was to allow the customer 6 per cent. per annum on all credit balances.

The bankrupt was engaged in the business of selling lighting fixtures, and in its regular course of business delivered on Friday of each week to the company the invoices of goods shipped to its customers, each invoice bearing this stamp. "This account assigned and transferred to Shapiro Bros. Factors Corporation," and signed by an officer of the bankrupt. Accompanying the invoices, in some cases, were the bills of lading. Upon delivery of these invoices so assigned the company gave its check to the bankrupt for 75 per cent. of the net face value of the invoices. No notice was given by the company to the bankrupt's debtors of these assignments. They were collected by the bankrupt and immediately turned over to the company; the original checks received in payment being delivered. Any amount collected and turned over to the company above the 75 per cent. advance, with commissions and interest, was credited to the bankrupt. At the time of the bankruptcy there was owing from the bankrupt to the company, on account of these advances, commissions and interest, about $24,000, against which they then held accounts receivable of the value of about $20,000. The reason for this difference is that advances had been made upon purported accounts assigned to the company during a period shortly before the bankruptcy, but that the shipments on these accounts had not actually been made. Therefore the accounts did not really exist, though the company did not know this fact.

A day or so before the bankruptcy the bankrupt's agent in St. Louis collected from the Crown Electric Company $1,500, which he wired to New York to the credit of the bankrupt's bank account. A telegram from St. Louis arrived at the bankrupt's place of business, telling of this transmission of funds, while an employé of the company was examining its books, and the president of the bankrupt gave to the company a certified check for that amount. The account covering this sale had been assigned to the company. Certain goods which had been shipped to the Peerless Lighting Company and Crown Electric Company, of St. Louis, have since been returned, and are now in the possession of the carriers, and claimed by the receiver and by the company. The accounts covering these shipments were assigned in the regular way. There is no evidence showing any fraud in the transaction between the parties, and no notice was posted or filed as provided by section 45 of the Personal Property Law of the state of New York.

Section 45 of the Personal Property Law of the state of New York provides that a certain specified notice must be filed, as required by the Lien Law (Consol. Laws, c. 33), and posted in a conspicuous place at the entrance of the building where the merchandise on which the lien is claimed is located, in order that liens upon merchandise or the proceeds thereof, created by agreement, may be valid as against creditors. This section is limited to merchandise only, and does not include accounts receivable. "Proceeds" of merchandise does not mean accounts receivable, but refers only to such proceeds as may be received by the pledgor in case he sells some of the pledged merchandise. It is apparent from the next clause, which refers to loans or advances on the "security of said·merchandise," the liens on merchandise only are contemplated by this act. Such I take to be the decision in Heyman v. Kevorkian, 193 App. Div. 859. 184 N. Y. Supp. 783; nor does the last paragraph of section 45 of the Personal Property Law apply to an assignment of accounts receivable. That paragraph applies only to such accounts receivable as result from or which may result from the sales of merchandise subject to the lien. In other words, this section applies only to cases where there is a lien on merchandise and on accounts receivable, which may result from the sale of such pledged merchandise. It does not apply to accounts assigned, which result from the sale of unpledged merchandise.

Acts requiring recording in order to perfect liens are strictly construed. A statute of South Carolina, which by its terms purported to cover all personal property, does not apply to accounts receivable. Ward v. American Agricultural & Chemical Co., 232 Fed. 119, 146 C. C. A. 311. I therefore conclude

that the assignment of these accounts by way of security was not void under section 45 of the Personal Property Law of the state of New York.

There was no fraud in fact in the dealings between the parties in this case nor do these facts amount to fraud in law. The fact that no notice of the assignment was given to the debtors, and that the lien of the assignee was secret, does not amount to fraud. National Discount Co. v. Evans (C. C. A.) 272 Fed. 570. In equity, the assignee for value is protected even against creditors of the assignor or his trustee in bankruptcy. In re Hawley Down-Draft Furnace Co., 238 Fed. 122, 151 C. C. A. 198. Any expressions to the contrary have been overruled by Greey v. Dockendorff, 231 U. S. 513, 34 Sup. Ct. 166, 58 L. Ed. 339. I therefore conclude that the assignment of these accounts as security was not fraudulent in law.

Section 22 of the General Corporation Law of the state of New York (Consol. Laws, c. 23) prohibits any corporation, other than a corporation formed under the banking laws, from carrying on the business of discounting bills, notes or other evidence of debt, or of receiving deposits or of "engaging in any other form of banking." The receiver claims that the lending of money at interest by Shapiro Bros. Factors Corporation to the bankrupt on the security of assigned accounts was in violation of the above section. It is not necessary to decide this question, for we are dealing in this case with executed transactions. The accounts were assigned as security, and the money was advanced to the bankrupt, and neither the bankrupt nor its trustee can upset a completed transaction. Pratt v. Short, 79 N. Y. 437, 35 Am. Rep. 531; Vought v. Eastern Building & Loan Assn., 172 N. Y. 508, 65 N. E. 496, 92 Am. St. Rep. 761. The decision in Ernst v. Terminal Clearing House Ass'n, 86 Misc. Rep. 295, 149 N. Y. Supp. 181, affirmed 167 App. Div. 902, 151 N. Y. Supp. 1114, is not contrary to the above decisions. These accounts were assigned as security for all indebtedness due or to become due to the company. The amount due was approximately $24,000. The value of the accounts assigned was approximately $20,000. Therefore the receiver is not entitled to have these assignments set aside, and he must pay over to the assignee the proceeds of the assigned accounts collected by him.

As to the goods returned from St. Louis and now in the possession of the carriers, I think this is the situation, as far as it can be determined from the evidence before me: The title to these goods passed to the consignee upon delivery to the carrier, and the debt from the consignee to the consignor was assigned to the company. If the consignee kept the goods, or returned them wrongfully, the assignee of the account could collect in an action against the consignee for goods sold. The return of the goods is a tender by the consignee of goods, instead of money, in payment of his debt. Neither the bankrupt nor its trustee has any interest in these goods. The assignee of the accounts receivable is therefore, in my opinion, entitled to accept these goods in payment of the debt due, and the receiver has no interest in the same.

The $1,500 collected by the bankrupt's agent in St. Louis, and placed to the credit of the bankrupt in its bank account, was the property of the company, and rightly paid to it by the bankrupt's certified check.

The receiver also asks for an accounting. From the evidence before me it does not appear that an accounting is necessary unless the receiver disputes the figures, which were put in evidence before me.

Walter B. Milkman, of Brooklyn, N. Y., for receiver.

I. L. Broadwin, of New York City, for Shapiro Bros. Factors Corporation.

LEARNED HAND, District Judge. The business of the claimant did not include, certainly in this instance, "discounting bills, notes or other evidences of debt." The accounts for goods sold, which the bankrupt assigned to it, were not "evidences of debt." They were choses in action arising from sales of goods contained on the books of

the bankrupt. What the statute means is commercial paper, which may pass from one to another, bearing the signature of the debtor. The bankrupt had none such, and assigned none such. Besides, it did not discount the accounts. Discounting is getting the present value of the debt; i. e., its face, less interest. This the bankrupt did not do. It kept the equity in the accounts above its own debts, and if these should turn out to be any the claimant would be accountable.

By no conceivable theory is this within any phase of section 22 of the New York General Corporation Law. The claimant is doing a business precisely like a pawnbroker, except that the pawns are not chattels.

Report confirmed.