WINSLOW BROTHERS AND SMITH COMPANY *vs.* UNIVERSAL COAT COMPANY.

Suffolk.    December 11, 1924. — March 2, 1925.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & WAIT, JJ.

*Sale.*

No error was committed by a judge of the Superior Court in ordering judgment for the plaintiff in an action by a vendor against a vendee for breach of a contract in writing for the sale of tanned coat skins where an auditor, to whom the action was referred under an agreement that his findings of fact should be final, found that, upon a request by the defendant that the plaintiff defer shipment of goods prepared for delivery, authorized representatives of the parties agreed that a certain portion of the goods should be unconditionally appropriated to the contract in the plaintiff's possession with the assent of the defendant, and that the leather was appropriated to the purposes for which the defendant required it although part of it was somewhat below the stipulated grade, and also assessed damages for the plaintiff on the theory that title had passed to the defendant, and in the assessment made an allowance for the defendant because some of the leather was below the stipulated grade.

Besides the goods appropriated to the defendant as above described, there was a residue of the amount called for by the contract which, according to the findings of the auditor, the plaintiff was excused from procuring and preparing for delivery because the defendant had refused to order delivery or in any way communicate with the defendant with regard thereto except that the plaintiff had agreed that, if the defendant would take and pay for the goods already prepared and appropriated as above described (which the defendant did not do), he would cancel the rest of the order.   As to such residue the auditor assessed as damages to which the plaintiff was entitled the difference between the price agreed upon in the contract and the market price at the date of repudiation of the contract by the defendant.   *Held,* that the assessment was proper under G. L. c. 106, § 53, (3) and that it was proper to order judgment thereon.

CONTRACT upon an account annexed for the purchase price of tanned coat skins described in the opinion.   Writ dated January 21, 1921.

The action was referred to an auditor under an agreement by the parties that his findings of fact should be final. Material findings by the auditor are described in the opinion.

Upon a motion by the plaintiff, *Hammond,* J., ordered judgment for the plaintiff upon the findings of the auditor in the sum of $5,958.22. The defendant alleged exceptions.

*M. J. Mulkern,* for the defendant.

*J. Sidney Stone,* ( *A. G. Grant* with him,) for the plaintiff.

PIERCE, J. This is an action of contract upon a declaration in four counts for the same cause of action. The first and fourth counts thereof are the same in all particulars material to the decision of this case, and are based upon an express contract of sale and purchase of five hundred dozen skins of tan coat leather. In substance they allege the delivery of and failure to pay for eighty-five and one twelfth . dozen skins of tan coat leather; the refusal to accept delivery of one hundred eight and eleven twelfths [one hundred seven and eight twelfths] dozen of such skins; and claim the right to recover the price agreed to be paid for the skins delivered, and damages for the refusal to accept delivery of the undelivered skins. Count 2 is upon an account annexed for goods sold and delivered. Count 3 is upon an account annexed without specific reliance upon any one of the common counts. The answer of the defendant is a general denial and payment. There is no declaration in set-off or claim of a right in recoupment.

The case was referred to an auditor, his findings of fact to be final. The auditor found in substance that the plaintiff, through the medium of letters, on December 16, 1919, entered into a written contract with S. Gluck and Weingold to sell five hundred dozen tanned coat leather skins in grades Nos. X, 1 and 2 "as the sorting might yield," deliveries to begin in February, 1920, at prices which varied with the grade. In pursuance of the agreement the plaintiff shipped to S. Gluck and Weingold thirty-six and eight twelfths dozen skins with a bill for the same. These skins were reshipped to the defendant and were paid for by it. The defendant company was substituted for S. Gluck and Weingold in the agreement, by a novation, about February 13, 1920. On February 14, 1920, the plaintiff shipped directly to the defendant two hundred seventy and seven twelfths dozen skins at the agreed price of $12,108.30. This bill was paid in full,

in part in February, 1920, and the balance on April 16, 1920. This shipment as well as the prior shipment comprised Nos. 1 and 2 grades only. Neither of these shipments included any No. X grade, nor were any No. X grade skins ever sent or tendered by the plaintiff to the defendant. The contract was not one of sale by sample nor was it a sale of goods suitable for use in the leather garments made by the defendant. After the last shipment the defendant complained to the plaintiff that some of the skins graded as No. 2 were not up to their grade and not suitable for use in the leather garments made by the defendant, and requested the plaintiff to examine such skins. An examination was made, and while the plaintiff did not admit that the skins invoiced as No. 2 grade were not up to grade, it was mutually agreed that thereafter the contract should be carried out by deliveries of No. 1 skins only.

In the early part of April, 1920, the defendant notified the plaintiff that it was well stocked with these skins, and requested that no more actual shipments be made without notifying the defendant. In the latter part of May, 1920, the plaintiff had tanned and sorted out for delivery, and appropriated to the defendant under the contract, eighty-five and one twelfth dozen skins, sorted out as No. 1's. Soon thereafter an officer of the plaintiff notified the defendant of this fact. To this notice the defendant's officers said they were well stocked, did not want the leather right away, but would take it in before the latter part of June. June 25, 1920, the plaintiff sent to the defendant an invoice and bill for this leather which had been bundled ready for delivery, with a letter stating it would not actually ship the leather until the following week. June 28, 1920, the defendant returned the invoice with a letter saying it would take the matter up with the plaintiff's Mr. Whedon upon his return.

Whedon had a conference with the defendant in the first part of July, 1920. At this meeting the defendant's treasurer made no objection to the appropriation of the skins, acknowledged these skins were the defendant's, asked that the charge as per invoice be temporarily withdrawn, and said that the defendant would take these skins later. In reply Whedon

stated that he would temporarily withdraw the charge, upon the understanding that the defendant was actually to take delivery and pay for the skins at a later date. At this time the defendant said they had a great deal of leather and would like to cancel the remainder of the contract. The plaintiff agreed that if the defendant would take and pay for the skins appropriated the plaintiff would cancel the remainder of the contract as requested.

On August 26, 1920, the plaintiff shipped to the defendant the skins above referred to as appropriated to the contract, with an invoice and bill for $3,963.76, the agreed price. The defendant refused to accept delivery and did not make any request to examine the leather. The leather was returned to the storehouse of the plaintiff. From time to time in conversations with the plaintiff the defendant "admitted the eighty-five and one twelfth dozen were the defendant's, but they would give no definite time when they would actually accept delivery." Under date of October 28, 1920, the defendant wrote the plaintiff: "In reference to our conversation regarding 85 dozen skins, we beg to advise that we cannot see our way clear to accept same as we have at this time in our stock room about $15,000 worth of leather, which is not moving, and which is more than we can afford to carry. Under these conditions we would ask you to assist us in cancelling this shipment." The eighty-five and one twelfth dozen skins exhausted or practically exhausted the leather of this kind at that time tanned by the plaintiff, and since then the plaintiff has tanned no further leather of the same description. The auditor found on the whole evidence and specifically on the agreement between Whedon and the treasurer of the defendant, *supra*, that the eighty-five and one twelfth dozen skins were unconditionally appropriated to the contract with the assent of the defendant; that the leather was appropriate for the purpose for which the defendant required it; and that the title to these skins passed to the defendant, citing St. 1908, c. 237, § 19, Rule 4 (1) now G. L. c. 106, § 21, Rule 4 (1). He further found that ten per cent of leather appropriated was of No. 2 grade, inferior to No. 1 grade but not a "material breach [variation]."

As regards the one hundred seven and eight-twelfths dozen skins which the defendant refused to accept, the auditor finds that the plaintiff was excused from preparing or procuring said skins because of the agreement that the contract should be terminated by the defendant taking and paying for the eighty-five and one twelfth dozen skins; and that the defendant's refusal to accept and pay for the eighty-five and one twelfth dozen skins, and its neglect to demand delivery of, or in any way to communicate with, the plaintiff, relative to the remaining one hundred seven and eight twelfths dozen skins, excused the plaintiff from thereafter preparing or procuring these one hundred seven and eight twelfths dozen skins.

Damages were assessed for the agreed price of the eighty-five and one twelfth dozen skins of No. 1 leather less the contract price of No. 2 leather, on the theory that the allowance to be made the defendant, because of the fact that ten per cent was No. 2 instead of No. 1 grade, is the difference between the contract price for No. 1 and No. 2 grades.    So computed the auditor found the amount due the plaintiff to be $3,944.87, to which interest is to be added from August 26, 1920, to the date of the judgment.    He assessed the damages as to the remaining one hundred seven and eight twelfths dozen skins on the difference between the agreed price and the market price on August 26, 1920, $2,013.35 plus interest thereon from August 26 to date of judgment.    The report was confirmed, and an order made that judgment be entered for the plaintiff in the sum of $5,958.22 with interest thereon from August 26, 1920.

The several counts in the declaration are sufficient to sustain the action of the plaintiff.    The finding that there was an appropriation of goods and that the title passed to the defendant was fully warranted by the recited facts and by the admissions of the defendant's officers.    The defendant " admits that it was liable on this branch of the case for $1,613.82, the amount found by the auditor," on the theory that such was the measure of damages if the breach consisted only in a failure to accept and pay for the eighty-five and one twelfth dozen skins.    We think, however, that the

auditor was right in assessing the damages on the theory
that the title had passed to the defendant. G. L. c. 106,
§ 21, Rule 4 (1). G. L. c. 106, § 52, (1). We further think
the auditor was right in assessing the damages in the manner
provided by G. L. c. 106, § 53 (3), as he did assess them for
the refusal to receive the remaining one hundred seven and
eight twelfths dozen skins of the contract to purchase five
hundred dozen skins and that his computation was correct.

The defendant does not show that it has suffered any
possible harm by the refusal of the auditor to receive the
evidence offered by him to controvert a possible contention
by the plaintiff that certain evidence of the defendant was
a matter of recent fabrication, inasmuch as there was no
evidence whatever that the plaintiff intended to contend
that the testimony sought to be corroborated was "a matter
of recent contrivance." *Commonwealth* v. *Tucker*, 189 Mass.
457, 484.

*Exceptions overruled.*