CONNECTICUT VALLEY ONION COMPANY *vs.* FAUSTIEN PIELOCK & others.

Franklin. September 21, 1932. — December 23, 1932.

Present: RUGG, C.J., CROSBY, WAIT, DONAHUE, & LUMMUS, JJ.

*Mortgage,* Of personal property: validity, recording.

A chattel mortgage of "7 acres more or less of Tobacco, now hanging in my tobacco barn," which contained an habendum to the mortgagee, his "executors . . . to their own use and behoof forever," and covenants by the mortgagor that he was "the lawful owner of the said goods and chattels"; that they were "subject to first mortgage to" a certain person; that he had "good right to sell the same as aforesaid; and that" he would "warrant and defend the same against the lawful claims and demands of all persons," was not a conveyance merely of the right which the mortgagor had to redeem from the prior mortgage, but a conveyance of the tobacco itself; and, the prior mortgage not having been recorded as required by G. L. (Ter. Ed.) c. 255, § 1, the second mortgage was not subject thereto; distinguishing *Howard* v. *Chase,* 104 Mass. 249.

BILL IN EQUITY, filed in the Superior Court for the county of Franklin on March 25, 1931, and described in the opinion.

The suit was referred to a master. Material findings by him are stated in the opinion. By order of *W. A. Burns,* J., there were entered an interlocutory decree confirming the master's report and the final decree described in the opinion. The plaintiff appealed.

The case was submitted on briefs.

*W. A. Davenport,* for the plaintiff.

*F. J. Lawler,* for the defendants.

WAIT, J. By an instrument bearing date April 20, 1930, the defendant Pielock purported to mortgage "Seven (7) acres of tobacco and Eight (8) acres of seed onions and one

half (½) two (2) acres of sett onions, growing or to be grown, on my land, located at Whatley, [*sic*] Mass. on the east of river road," to the Connecticut Valley Onion Company. The consideration stated was $1 and other valuable consideration. The writing was blank as to the amount, time, and interest. On April 20 Pielock owed the mortgagee $438.24 and interest on a demand note dated November 15, 1928, and it was agreed that the company should make advances from time to time on the crop. Up to November 30, 1930, $1,738.24 had become due therefor. On April 20, 1930, the crops were not planted. Campbell, the plaintiff's manager, testified that he held the writing until the crops covered by it were growing in the ground. The instrument was recorded with the town clerk of Whately on June 14, 1930. The tobacco was taken from the poles sometime in November by the plaintiff's foreman and relatives of Pielock, in part at the expense of the plaintiff. Sometime in October, prior to the thirtieth, the defendant C. R. Blair discovered that the mortgage from Pielock to the plaintiff had not been recorded within fifteen days after the date written in it. Pielock then owed her on account and she was indorser upon notes of his for $350 and $200, held by the Crocker National Bank. Pielock also was indebted to the bank. On October 30, 1930, Miss Blair took a mortgage from Pielock, by which "in consideration of Twenty-eight Hundred and Eighty-five paid by C. R. Blair of South Deerfield in said County of Franklin, and Crocker National Bank of Turners Falls" he granted, sold, transferred and delivered "unto the said C. R. Blair the following goods and Chattels, namely: 7 acres more or less of Tobacco, now hanging in my tobacco barn on land bought of James Campbell on east side of Whately River Road," *habendum*, "to the said C. R. Blair and her executors . . . to their own use and behoof forever." He covenanted that "I am the lawful owner of the said goods and chattels; that they are subject to first mortgage to Donald Campbell, that I have good right to sell the same as aforesaid; and that I will WARRANT AND DEFEND the same against the lawful claims and demands of all persons."

This mortgage was recorded on October 30, 1930, the day of its date. After she had secured it, she saw Campbell, the plaintiff's manager, told him the mortgage of April 20 was invalid because not seasonably recorded, stated that, fearing an attachment, she had acted to protect her interest and his, and suggested an assignment of his claim to her. Campbell said he must consult his attorney. Later an agreement was drawn up and submitted to her, which she refused to sign on the ground that it was not what she had agreed to. The tobacco was bought by the General Cigar Co., Inc., for $1,738.24. Both the plaintiff and Miss Blair for herself and the bank demanded the amount from the cigar company. The plaintiff filed its bill against Pielock, Miss Blair and the cigar company, praying an accounting by Miss Blair and Pielock for onions sold and delivered and for the amount due or to become due for the tobacco, and the determination to whom the funds belong, with appropriate injunctions pending that determination. Later the Crocker National Bank was made a party defendant, after it had joined in an answer with Pielock and Miss Blair. The General Cigar Co., Inc., filed a petition in the nature of interpleader and paid into court the $1,738.24 due from it. A master reported the facts hereinbefore stated, and that, the plaintiff having received the onions, no claim was made in regard to them. He found that Pielock owed the plaintiff $2,324.48, and, if its mortgage was valid, the plaintiff was entitled to the money paid in by the General Cigar Co., Inc., less $75, its just costs and charges. He found Pielock owed Miss Blair $635 on account, and would owe $550 more if she were called on to pay the notes indorsed by her; and owed the bank $2,350, including the notes indorsed by Miss Blair. There was evidence that Pielock had stated to Miss Blair that he would not sign the mortgage to her unless she agreed to take care of Campbell's bill; and that she did not tell him "Mr. Campbell's mortgage was no good." The report was confirmed. After hearing, decree was entered that (1) $75 be paid out of the amount paid into court for expenses and counsel fees of the General Cigar Co., Inc., and the bill be dismissed without

costs as against that company; (2) the remainder with any interest accrued be paid to the defendants Blair and the Crocker National Bank as follows, $635 to Miss Blair, the remainder to the bank to be applied so much as should pay the notes for $350 and $200 indorsed by Miss Blair and the balance to the credit of Pielock on his indebtedness to the bank; (3) the bill be dismissed against the defendants Miss Blair and the bank with several costs in stated sums for which execution was to issue; (4) the plaintiff's claim against Pielock be established in $2,417.46 plus costs in a stated sum, for the total of which execution was to issue. The plaintiff appealed.

Our statute law (G. L. [Ter. Ed.] c. 255, § 1), requires that mortgages of personal property shall be recorded on stated records "within fifteen days from the date written in the mortgage," and enacts that "The mortgage shall not be valid against a person other than the parties thereto until so recorded; and a record made subsequently to the time limited shall be void." No such exception is made with reference to those who have notice of an unrecorded mortgage as there is in case of an unrecorded deed of real property. G. L. (Ter. Ed.) c. 183, § 4. Notice of an unrecorded chattel mortgage does not affect the title of one who takes a subsequent mortgage of the property with knowledge of its existence. *Travis* v. *Bishop*, 13 Met. 304. *Bingham* v. *Jordan*, 1 Allen, 373. *Berry* v. *Levitan*, 181 Mass. 73. A different situation arises where the later conveyance is a conveyance of the equity of redemption from the prior unrecorded mortgage. If the later by its terms is made subject to the earlier, then, although not recorded, the earlier retains precedence. This was decided in *Howard* v. *Chase*, 104 Mass. 249, which stated (page 251) that notice of a preëxisting unrecorded mortgage would not affect the title of one who had taken a conveyance of the property; but that one who took a conveyance merely of the right which the mortgagor had to redeem from the unrecorded mortgage was affected by his notice of its existence. The case has frequently been cited and followed. *Pecker* v. *Silsby*, 123 Mass. 108. *Eaton* v. *Tuson*, 145 Mass.

218.   *Whitney* v. *Browne,* 180 Mass. 597.   *Federal Trust Co.* v. *Bristol County Street Railway,* 218 Mass. 367, 374. See *Bailey* v. *Way,* 266 Mass. 437.

The plaintiff contends that it is controlling here.   It relies upon the words of the covenant that the goods and chattels conveyed are "subject to first mortgage to Donald Campbell."   But it is to be noted that the conveyance by its words of grant, and by its description of the property is a conveyance of "7 acres more or less of Tobacco, now hanging in my tobacco barn," that is, "of the property" and not "of the right" of the mortgagor "to redeem."   It is further to be noted that the covenants of right to sell, and of warranty are not limited.   Such a conveyance is not a conveyance merely of the right, title and interest of the grantor.   It is a conveyance of the thing described.   Parol evidence cannot control the plain language of a deed.   If admissible, the evidence does not require a different finding.   The contention is not sound.   *Howard* v. *Chase,* 104 Mass. 249, is not controlling here.

The statute is imperative that record must be made within fifteen days from the date written in the mortgage; and that a record made subsequent to the time limited shall be void.   Here the date so written was April 20, 1930, and the record was not made until June 14, 1930.   It is manifest that not only was the record too late but also that it was void.

We need not consider whether a mortgage of crops to be grown is valid as to third persons if made before the seed is in the ground.   See *Parsons* v. *American Agricultural Chemical Co.* 280 Mass. 424.   No question in that regard has been raised by the parties.   It well may be that the date of the record is late because the instrument was held in escrow until the crops had been planted.   The date of the mortgage remained April 20, and June 14 is much later than fifteen days thereafter.   If not invalid because made too early, the mortgage clearly was invalid because recorded too late.

Inasmuch as it made the Crocker National Bank a party defendant, it is not open to the plaintiff to challenge the

decree for dealing with the bank. The grant of the mortgage of October 30, 1930, was made to C. R. Blair, to hold to her use. The Crocker National Bank, even if not a party to that deed, which we need not decide, was clearly interested as it is recited as joined in furnishing the consideration. Up to the amount of the full consideration for her mortgage, C. R. Blair can insist upon its enforcement; and no harm results to the plaintiff. The decree has not been challenged in brief or argument in any respect except the determination that Miss Blair's mortgage takes precedence of the plaintiff's, and the provision made therein for the bank. In those respects no error is shown on this appeal.

*Decree affirmed with costs.*