SAMUEL ROSEN, trustee in bankruptcy, *vs.* LOUIS I. GARSTON
& others.

Suffolk.    January 8, 1946. — April 1, 1946.

Present: FIELD, C.J., QUA, DOLAN, RONAN, & WILKINS, JJ.

*Fraudulent Conveyance. Sale,* Transfer of title.    *Pledge.    Mortgage,* Of
    personal property: what constitutes, validity, recording.    *Bankruptcy,*
    Trustee's rights, Fraudulent conveyance.

On conflicting evidence of the circumstances in which printed matter was
    specially manufactured by a corporation with its labor and from ma-
    terials furnished by it on an order by a second corporation, was of
    value only to the second corporation, and portions thereof were shipped
    to the second corporation from time to time on its orders and were
    paid for by it upon shipment, and goods unshipped at the end of a year
    were to be paid for by the second corporation, a judge hearing a suit
    in equity was not plainly wrong in finding that title to goods so manu-
    factured, while they remained unshipped in the possession of the first
    corporation within such year, was in that corporation and that the
    amount which would become due it upon shipment or at the end of the
    year was not an account receivable belonging to it.
A pledge of goods remaining in the possession of the pledgor constituted
    a chattel mortgage thereof and, if unrecorded under G. L. (Ter. Ed.)
    c. 255, § 1, was invalid as against an assignee for the benefit of credi-
    tors of the pledgor, or against a purchaser from such assignee, or against
    a trustee in bankruptcy of the pledgor afterwards appointed.
Upon warranted findings in a suit in equity by the trustee in bankruptcy
    of a corporation against the mortgagee under an unrecorded chattel
    mortgage given by the corporation, conclusions were required that a
    sale of the mortgaged goods for a price determined without regard to
    their value by an assignee for the benefit of the creditors of the corpora-
    tion, who was an employee of and straw for the mortgagee and exer-
    cised no independent judgment, had been made with intent, partici-
    pated in by the corporation, the mortgagee and the purchaser, to
    hinder, delay or defraud its unsecured creditors and was a fraudulent
    conveyance, and that the mortgagee was liable to the trustee in bank-
    ruptcy for the entire amount of certain sums which the assignee's
    purchaser, who had assumed the liability secured by the mortgage,
    had received upon his reselling such goods and had turned over to the
    mortgagee.

BILL IN EQUITY, filed in the Superior Court on June 21,
1943.

The case was heard by *Goldberg,* J.

*J. Minkin,* (*G. Minkin* with him,) for the defendant New Bedford Acceptance Corporation.

*J. C. Johnston,* (*S. Rosen* with him,) for the plaintiff.

RONAN, J.   The trustee in bankruptcy of the Superior Printing Company, Inc., brought this bill in equity to set aside certain conveyances alleged to be in fraud of the creditors of the company.   An amendment to the bill alleged that the bankrupt on May 23, 1942, pledged certain merchandise as collateral security for the payment of its note for $9,100 payable to the defendant New Bedford Acceptance Corporation; that the pledge constituted a personal property mortgage; that this mortgage was not recorded as required by G. L. (Ter. Ed.) c. 255, § 1; that the bankrupt on May 25, 1942, made an assignment for the benefit of its creditors to the defendant Da Rocha, who acted in behalf of all the defendants; that Da Rocha on June 1, 1942, sold all the assets of the Superior Printing Company, Inc., to a new corporation known as the Superior Printers, Inc.; and that this latter corporation received from Wesco Water Paints Inc. for which this pledged merchandise was manufactured the sum of $7,100 which it turned over to the New Bedford Acceptance Corporation, "which took the same on account of and in trust for the plaintiff."   The bill as amended prayed that the New Bedford Acceptance Corporation be ordered to account for and pay to the plaintiff the said money received by it from the Superior Printers, Inc..   The defendant New Bedford Acceptance Corporation, hereinafter called the acceptance corporation, appealed from a final decree ordering it to pay the plaintiff $2,973.27 and dismissing the bill as to all the other defendants.   The plaintiff appealed on the ground that the judge should have ordered the acceptance corporation to pay a larger amount, and that he should not have dismissed the bill against all the other defendants.

The evidence is reported, and the judge made a report of the material facts.   The facts found by the judge and those which we ourselves find, *Lowell Bar Association* v. *Loeb,* 315 Mass. 176, may be summarized as follows: The defendant Costa, a printer, together with the defendant Garston,

a money lender, organized the Superior Printing Company, Inc., in October, 1936. Costa was the treasurer and general manager and Garston the clerk, and both were directors from the inception of this corporation until it was adjudged a bankrupt on July 29, 1942. Garston held twenty-four shares of stock, Costa twenty-five shares, and a bookkeeper the remaining share. Garston lived in New Bedford, and on account of other ventures gave little time to this printing business. His father, who became president, represented his interest in this business. Garston's principal duty was to guarantee payment to those selling materials to this corporation, lending his credit by indorsement of its paper and also making it loans. Garston in 1940 became president of the acceptance corporation, and soon thereafter this corporation began to make loans to the Superior Printing Company, Inc., hereinafter called the old corporation. On May 23, 1942, the acceptance corporation held two notes, one for $2,000 and another for $10,000, secured by mortgages upon the plant and equipment of the old corporation. On that day the old corporation gave its note for $9,100 to the acceptance corporation in payment of a previous note and for some cash. This note was secured by printed stock manufactured for the Wesco Waterpaints Inc. and also by accounts receivable.

The old corporation on May 25, 1942, made an assignment for the benefit of creditors to the defendant Da Rocha, an employee of and a straw for the acceptance corporation. A meeting of the creditors was held on May 29, 1942, at which an offer of ten per cent was made to the unsecured creditors. The amount then owed to the unsecured creditors was $5,266.11. These creditors refused to accept the offer. The Superior Printers, Inc., hereinafter called the new corporation, was formed on June 1, 1942. The assignee, Da Rocha, on the same day sold all the assets of the old corporation to the new corporation for $625. This sum was lent by the acceptance corporation to the new corporation. This latter corporation assumed the liabilities of the old corporation to the secured creditors, took over the plant and equipment of the old corporation,

and continued the business. The new córporation on June 5, 1942, gave a new mortgage for $15,000 to the acceptance corporation. The consideration for this mortgage was the discharge of the two mortgages for $2,000 and $10,000 and the payment of $2,650 to the new corporation.

The Wesco Waterpaints Inc., hereinafter called Wesco, began in 1941 to have some of the printing of color cards, wrappers and labels done by the old corporation. This work was done upon orders from Wesco, and the paper stock except one small lot was furnished by the old corporation. When the paper was printed, it was packed and put to one side to await a shipping order from Wesco. Bills were sent to Wesco as the goods were shipped, and Wesco agreed to pay for any goods that it did not direct to be shipped within a year after they had been printed. Wesco, after the old corporation ceased to do business, continued without any interruption to do business with the new corporation in the same manner as it did with the old corporation. It paid the new corporation for all paper that the old corporation had printed but had not delivered, and thereafter in all respects Wesco continued as if the old corporation had never existed.

The principal contentions of the acceptance corporation are (1) that the relations between the old corporation and Wesco were such as to create only a claim in favor of the old corporation against Wesco for labor and materials, or in the alternative (2) that in any event title to the finished printing done by the old corporation for Wesco passed to Wesco as soon as the work was done and while the goods were still in the possession of the old corporation; that after title passed the old corporation had only claims against Wesco for the agreed price; and that according to either alternative these money claims were accounts receivable of the old corporation which it could and did validly pledge to the acceptance corporation even though the instrument of pledge was not recorded. We assume, as have the parties, that an instrument pledging accounts receivable is valid against third parties, and that such a pledge does not come within G. L. (Ter. Ed.) c. 255, § 1. See *Taylor* v.

*Barton Child Co.* 228 Mass. 126, 131. Under the acceptance corporation's first alternative it contends that the contract for printing between the old corporation and Wesco was a contract for goods to be manufactured especially for the buyer and not suitable for sale to others in the ordinary course of the seller's business, and that it is recognized in the statute of frauds that such contracts are for materials and labor and not for the sale of goods. G. L. (Ter. Ed.) c. 106, § 6 (2). This provision of the statute of frauds takes cognizance of the common law of this Commonwealth prior to the adoption of the sales act, and we have uniformly held that contracts of the nature just mentioned are contracts for material and labor. *Mixer* v. *Howarth,* 21 Pick. 205. *Spencer* v. *Cone,* 1 Met. 283. *Gardner* v. *Joy,* 9 Met. 177. *Goddard* v. *Binney,* 115 Mass. 450. *Adams* v. *Cohen,* 242 Mass. 17. *Brooks* v. *Stone,* 256 Mass. 167. *M. K. Smith Corp.* v. *Ellis,* 257 Mass. 269. Wesco, however, was not paying for material and labor alone but was purchasing finished printed matter; and while the nature of the contract is important in determining the time when property in the goods passed from the old corporation to Wesco, there were also other circumstances which must be considered. Whether title to the printed stock had passed to Wesco at the time of the pledge depended upon the intention of the parties. *Pratt* v. *Maynard,* 116 Mass. 388. *Morin* v. *Clark,* 296 Mass. 479. It is urged that the parties must have intended that the title should be transferred to Wesco as soon as the cards, labels and wrappers were printed and laid to one side to await shipping orders from Wesco. It is pointed out that the goods were of no value to anyone except Wesco, that the printing itself was an irrevocable appropriation of the goods to the contract, and that at least the goods were appropriated to the contract when the old corporation with the assent of Wesco set the goods aside, in accordance with instructions from Wesco, to await orders to ship them. There was also evidence that Wesco had inquired whether the old corporation was carrying sufficient insurance against fire covering the printed stock. This aspect of the evidence would be sufficient to

support a finding that title to the stock finished for Wesco had passed to the latter at the time it was pledged as collateral for the note of May 23, 1942. G. L. (Ter. Ed.) c. 106, § 21, Rule 4 (1). *Mitchell* v. *LeClair*, 165 Mass. 308. *Farwell* v. *Solomon,* 170 Mass. 457. *Bristol Manuf. Corp.* v. *Arkwright Mills,* 213 Mass. 172. *Winslow Brothers & Smith Co.* v. *Universal Coat Co.* 252 Mass. 7. *Beck & Pauli Lithographing Co.* v. *Colorado Milling & Elevator Co.* 52 Fed. 700. *Louis F. Dow Co.* v. *Bittner,* 187 Minn. 143. *Berkshire Cotton Manuf. Co.* v. *Cohen,* 236 N. Y. 364. *Forsyth & Ingram* v. *Mann Brothers,* 68 Vt. 116. *Central Lithographing & Engraving Co.* v. *Moore,* 75 Wis. 170. But there was evidence pointing in an opposite direction. No accounts receivable corresponding to goods stored for Wesco appeared on the books of the old corporation, but items were entered as receivables when the goods had been shipped and bills therefor had been sent to Wesco. Wesco at first carried an item on its books as representing the goods stored under the heading of a contingent liability, but later no item appeared on its books until the goods were shipped and bills were received by Wesco when the items were carried on the books of the latter as an account payable. Wesco continued its business with the new corporation and made no objection when it found that the goods listed in the "Wesco inventory" had been pledged. Wesco had refused to pay for a lot of goods out of this inventory that had been lost in transit. The orders given by Wesco contained the legend "f. o. b. delivered," and after the printed words "to be delivered" contained the typed words "make up and hold." The three separate lists of collateral attached to the note of May 23, 1942, put the inventories comprising materials and tangible goods in a different class from the accounts receivable. Included in the accounts receivable were five accounts due from Wesco. It is apparent that the old corporation and the acceptance corporation made a distinction between these two kinds of collateral. There was no evidence that Wesco carried any insurance on the stored goods or that the old corporation covered these goods by any policy in which Wesco was de-

scribed as the insured or mentioned as a party having a beneficial interest. *Chandler Grain & Milling Co.* v. *Shea*, 213 Mass. 398. Wesco was not in default in accepting any of the goods listed in the inventory. The judge found that title had not passed to Wesco when the collateral note was given on May 23, 1942. See G. L. (Ter. Ed.) c. 106, § 21, Rule 5; *Weld* v. *Came*, 98 Mass. 152; *Wilson* v. *Russell*, 136 Mass. 211; *Barrie* v. *Quinby*, 206 Mass. 259, 266; *Brokaw-Eden Manuf. Co.* v. *Lockerbie*, 237 Mass. 463. On all the evidence, whether the title to the finished printed material had passed to Wesco was a question of fact, and the finding of the trial judge that the title had not passed when the pledge was made has not been shown to be plainly wrong and cannot be reversed. *Berman* v. *Coakley*, 257 Mass. 159, 162. *Boston* v. *Santosuosso*, 307 Mass. 302, 331, 332.

Wesco did not become liable to pay for the goods until they had been shipped and billed to it, except that it became liable to pay for goods that had been printed for a year and had not been ordered shipped. The amount that would become due when the goods were shipped was not an account receivable when the goods were printed and stored. *National Bank of Newport* v. *National Herkimer County Bank*, 225 U. S. 178, 184. *Haverfield Co.* v. *Evatt*, 143 Ohio St. 58. *Sadler* v. *Pure Oil Co. Inc.* 172 S. C. 220, 222. See *In re Worth Lighting & Fixture Co. Inc.* 292 Fed. 769, 771; *In re Bernard & Katz, Inc.* 38 Fed. (2d) 40.

As the old corporation had title to and possession of the goods pledged with its note of May 23, 1942, the pledge constituted a personal property mortgage, which to be valid against others than the parties thereto was required to be recorded in accordance with G. L. (Ter. Ed.) c. 255, § 1. *Connecticut Valley Onion Co.* v. *Pielock*, 281 Mass. 287. *Peabody Gas & Oil Co.* v. *Standard Oil Co. of New York*, 284 Mass. 87. The effect to be given to this unrecorded mortgage, in so far as it concerns the rights of the plaintiff, is governed by the law of this Commonwealth. *Thompson* v. *Fairbanks*, 196 U. S. 516. *Knapp* v. *Milwaukee Trust Co.* 216 U. S. 545. Under our law the trustee in bankruptcy

is not bound by such mortgage and may have it set aside. *Clark* v. *Williams*, 190 Mass. 219. *Goodrich* v. *Dore*, 194 Mass. 493. *Alexander* v. *F. L. Smithe Machine Co.* 248 Mass. 436. *Leahy* v. *George*, 273 Mass. 130. *Mason* v. *Wylde*, 308 Mass. 268, 276. See *In re Parkway Knitting Mills, Inc.* 119 Fed. (2d) 605; *Maguire* v. *Gorbaty Bros.* 133 Fed. (2d) 675; *Seymour* v. *Wildgen*, 137 Fed. (2d) 160.

A chattel mortgage unless recorded as prescribed by G. L. (Ter. Ed.) c. 255, § 1, is not valid except as against the parties. Da Rocha, the common law assignee, was not a party to the mortgage, *Chick* v. *Nute*, 176 Mass. 57, and by him all the assets of the old corporation had been transferred to the new corporation before the petition in bankruptcy was filed against the old corporation. The new corporation, even if it knew of the prior unrecorded mortgage to the acceptance corporation, by a fair and legitimate purchase could acquire a full and complete title to the mortgaged goods that the plaintiff as representing the creditors of the old corporation could not impeach. It was said in *Bingham* v. *Jordan*, 1 Allen, 373, 374, "Without registration or delivery, a mortgage of personal property has no validity against a purchaser from the mortgagor, even with notice of the mortgage. . . . The debtor could therefore have sold this property, and have given a perfect title to a purchaser." *Travis* v. *Bishop*, 13 Met. 304. *Connecticut Valley Onion Co.* v. *Pielock*, 281 Mass. 287, 290. But it is open to the plaintiff to challenge the validity of the transfer of the mortgaged goods to the new corporation as in fraud of creditors of the old corporation. *In re Finlay*, 104 Fed. 675. *In re Knight*, 125 Fed. 35. *Faulkner* v. *Kaplon*, 203 Fed. 114. *Prall* v. *Rush*, 51 S. D. 638.

The judge was right in finding that as against the plaintiff the acceptance corporation got no title to the goods pledged with the note. While the judge found that the plaintiff was entitled to these goods or their proceeds, he made no finding that the transfer of the goods from the old to the new corporation was made with intent to defraud, hinder or delay the creditors of the old corporation. All the evidence is reported, and all questions of law, fact and discre-

tion are open. We accept the findings of the judge upon oral evidence unless they are shown to be plainly wrong. We ourselves also find facts in addition to those found by the judge. *Lowell Bar Association* v. *Loeb,* 315 Mass. 176. *Cooperstein* v. *Bogas,* 317 Mass. 341.

The acceptance corporation dominated the entire situation. Garston was influential in both the acceptance corporation and the old corporation. Da Rocha exercised no independent judgment. He had no appraisal made. He did whatever the attorneys for the acceptance corporation instructed him to do. He purported to sell all the assets of the old corporation to the new corporation for $625. This amount was determined without any regard to the value of the assets of the old corporation, but was decided upon as the amount necessary to pay ten per cent to the unsecured creditors of the old corporation. Although those creditors refused to accept this amount, it was subsequently lent to the new corporation by the acceptance corporation. The judge reports that no evidence was offered as to what became of this sum. The new corporation assumed the liabilities of the secured creditors of the old corporation. The inevitable result of this transfer of all the assets of the old to the new corporation was to defraud, hinder and delay the unsecured creditors, and it is plain that the transfer was made for that purpose. It may be that, if the transfer had not been made, these creditors would have had difficulty in satisfying their claims against the old corporation on account of the encumbrances upon its property. It is to be noted that soon after the transfer the acceptance corporation took a mortgage for $15,000 from the new corporation in payment of two existing mortgages and $2,650 paid to the new corporation. The proper conclusion from these facts is that the transfer of assets from the old to the new corporation was made with the actual intent to defraud, hinder and delay the unsecured creditors of the old corporation, that it was a fraudulent conveyance both at common law and under the statute, and that the goods pledged with the note of May 23, 1942, were included in this conveyance. G. L. (Ter. Ed.) c. 109A, § 7. *Kimball* v. *Thompson,* 4

Cush. 441. *Perkins* v. *Becker's Conservatories, Inc.* 318 Mass. 407, 411, and cases cited. *Shapiro* v. *Wilgus,* 287 U. S. 348. *Buffum* v. *Peter Barceloux Co.* 289 U. S. 227.

The judge found the acceptance corporation liable only for the amount necessary to pay the unsecured creditors of the old corporation after deducting the amounts paid to them from time to time by the new corporation. In this there was error. Both the old and new corporations were parties to a fraudulent conveyance as against the plaintiff. Neither was entitled to be credited in this proceeding with payments made by the new corporation to creditors of the old corporation. The acceptance corporation, which was an active participant in the entire transaction, has no better standing and is not entitled to any credits on account of those payments. *Manufacturers National Bank* v. *Simon Manuf. Co.* 233 Mass. 85. *R. E. McDonald Co.* v. *Finkovitch,* 270 Mass. 362. In the next place, the trustee in bankruptcy was entitled to have the pledge of the printed stock to the acceptance corporation set aside and to recover the goods included in the pledge or their value from "whomever may hold or have received it." U. S. C. (1940 ed.) Title 11, § 110 (e) (2). *Mason* v. *Wylde,* 308 Mass. 268, 275. *Thomas E. Hogan, Inc.* v. *Berman,* 310 Mass. 259, 261. That the amount recovered might exceed the amount necessary to satisfy the claims of these creditors did not justify the Superior Court in determining the amount owed to them and limiting the damages to that amount. The disposition of the surplus, if any, was a matter to be settled by the Federal court having jurisdiction over the administration of the estate of the bankrupt. *Wellman* v. *North,* 264 Mass. 469. *McCrory* v. *Donald,* 119 Miss. 256. *Cunningham* v. *Mitchell,* 126 Wash. 294.

The "inventory" of goods pledged with the note of $9,100, dated May 23, 1942, appears to amount to $7,191.62; and as payments were made by Wesco to the new corporation for goods shipped from this inventory, corresponding amounts were paid by the new corporation to the acceptance corporation. The balance on this note has been reduced to $1,500, but some of the payments made on account

of this note came from Wesco in payment of goods other than those included in the inventory. The auditor of the new corporation testified that there was a shrinkage in this inventory, and that goods therefrom shipped to Wesco amounted to at least $5,300 or $5,400 which was the amount ultimately received by the acceptance corporation. Counsel for the plaintiff apparently did not question that this was correct. The amount for which the acceptance corporation should therefore be held liable is $5,300.

The plaintiff finally contends that other defendants besides the acceptance corporation should also have been found liable. The bill as amended does not seek damages from the other defendants for any breach of duty owed by them to the old corporation, see *Putnam* v. *Handy*, 247 Mass. 406; *Manning* v. *Campbell*, 264 Mass. 386, but, in so far as the pledge of the inventory of the goods is concerned, is limited to an accounting by the acceptance corporation for the proceeds from the sale of the "inventory." No part of these proceeds was received by any of the other defendants for their own use. All of the proceeds have been traced to the acceptance corporation. In these circumstances there was no error in refusing to find any of the defendants other than the acceptance corporation liable on this accounting. *Pratt* v. *Tuttle*, 136 Mass. 233. *Perkins* v. *Becker's Conservatories, Inc.* 318 Mass. 407, 414, 415.

The final decree is modified by striking out $2,973.27 and substituting therefor $5,300. The decree should also provide for interest from the time payments up to this last mentioned amount were received by the acceptance corporation on account of goods sold to Wesco from the inventory of May, 1942. The decree as so modified is affirmed with costs against the defendant acceptance corporation.

*So ordered.*